In re GATEWAY CENTER BUILDING
INVESTORS, LTD., Debtor.

**Bankruptcy No. 87–03545–BSS.**

United States Bankruptcy Court,
E.D. Missouri, E.D.

Jan. 25, 1989.

Jerome I. Kaskowitz, Blumenfeld, Sandweiss, Marx, Tureen, Ponfil & Kaskowitz, P.C., Clayton, Mo., for Gateway Center Bldg. Investors, Inc.

Carl J. Spector, Charles A. Weiss, John J. Meyer, Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., for Mellon Bank, N.A.

Jason M. Rugo, William E. Buckley, Thomas P. Hohenstein, Gallop, Johnson & Neuman, St. Louis, Mo., for Paric Corp.

Steven N. Cousins, Susan Bradley Buse, St. Louis, Mo.

Robert C. Jones, Vines, Kruger, Jones, Kraner & Rubin, Examiner, St. Louis, Mo., Richard S. Bender, Rosenblum, Goldenhersh, Silverstein & Zafft, Clayton, Mo., for Trivers, Associates.

Harry Gershenson, Jr., Gershenson & Gershenson, Clayton, Mo., for William C. Carr & Associates.

## MEMORANDUM OPINION AND ORDER

BARRY S. SCHERMER, Bankruptcy Judge.

## INTRODUCTION

On December 3, 1987, Gateway Center Building Investors, Ltd., a Georgia limited partnership, (hereinafter the "Debtor" or "Gateway") filed a voluntary petition under Chapter 11 of Title 11 of the United States Code. Mellon Bank, N.A. (hereinafter "Mellon"), a secured creditor of the Debtor, filed a proof of claim in the amount of $6,060,120.83 for money loaned to Gateway on June 16, 1986. Mellon's claim is secured by a deed of trust on the Debtor's real property located at 1000 Washington Avenue in St. Louis, Missouri known as the Merchandise Mart Building (hereinafter the "Merchandise Mart"). Paric Corporation (hereinafter "Paric"), a Missouri corporation, also filed a proof of claim in the amount of $1,264,729.90. Paric claims a mechanic's lien based upon renovation work on the Merchandise Mart.

On November 23, 1988, Mellon filed a Motion For Summary Judgment and Memorandum In Support thereof on the issue of priority of its lien over that asserted by Paric. On November 30, 1988, Paric filed its Motion For Summary Judgment and Memorandum In Support thereof on the issue of lien priority. On December 13, 1988, both Mellon and Paric filed responses to the other's brief. This Court now addresses the issue of who has the superior lien.

## JURISDICTION

This Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, 1334 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. This is a "core proceeding" which the Court may hear and determine pursuant to 28 U.S.C. § 157(b)(2)(K).

## FACTS

### A. GATEWAY'S LOANS SECURED BY THE MERCHANDISE MART

The Debtor was formed on September 19, 1985. Its general partners are Ameritus Corporation and John C. McDonald (hereinafter collectively referred to as "Ameritus"). Sometime in 1985, Ameritus became interested in acquiring and renovating the Merchandise Mart. In late July, 1985, Ameritus approached Mellon concerning financing the Merchandise Mart acquisition and renovation. On December 31, 1985, Gateway obtained a loan in the amount of $3.6 million from Weston Banking Corporation (hereinafter "Weston") to purchase the land and building known as the Merchandise Mart. As security for the loan, Gateway granted Weston a purchase money deed of trust dated and recorded on December 31, 1985.

On April 3, 1986, Mellon issued to Gateway a commitment letter providing a financing package of $21,600,000.00. The terms and conditions set forth in the commitment letter were incorporated in a Construction Loan Agreement. The loan between Mellon and Gateway closed on June 16, 1986.

At closing, Gateway executed and delivered to Mellon a deed of trust which was recorded the same day. It is undisputed that Mellon's deed of trust constitutes a valid and duly perfected lien in favor of Mellon against all Merchandise Mart real estate, buildings, structures, improvements, fixtures, fittings, appliances, equipment, machinery, building materials and articles of personal property of every kind and character which are situated in the Merchandise Mart real property.

In April, 1986, Weston advanced approximately $1.25 million to Gateway. On June 16, 1986, Mellon wired to Credit Suisse $1,280,833.33 to the credit of Weston to pay the remainder of Gateway's indebtedness.

### B. PARIC'S INVOLVEMENT WITH THE MERCHANDISE MART

In 1985 Ameritus approached Paric to serve as General Contractor for the proposed renovation of the Merchandise Mart.

Paric submitted its initial proposal on December 5, 1985 and worked thereafter with project architects and engineers in developing the plans and specifications for the renovation. Paric commenced investigative demolition in January, 1986 and periodically continued such demolition work thereafter through September, 1986. Paric and Gateway executed a written General Construction Contract on June 1, 1986.

On June 23, 1986, Paric and various subcontractors commenced full-scale work on the renovation project. Work continued uninterrupted until March 17, 1987, when Paric ceased work due to Gateway's uncured defaults and breach of its obligation to make payments to Paric under the General Construction Contract. In May, 1987, Paric filed its mechanic's lien and petition to enforce its lien.

### C. THE DISPUTE BETWEEN MELLON AND PARIC

It is undisputed that Mellon had intimate knowledge of the contractual agreement between Gateway and Paric. In fact, the Construction Loan Agreement between Mellon and Gateway identifies the General Contractor as Paric Corporation. Paragraph 4.01(s) of the Construction Loan Agreement states that the "Borrower (Gateway) shall have furnished to the Lender (Mellon) an executed copy of the General Construction Contract for the construction of the improvements by the General Contractor (Paric)...." The General Construction Contract is identified in the Definition section of the Construction Loan Agreement as the General Construction Contract entered into between Gateway and Paric. The extent of Mellon's knowledge of the contractual relationship between Gateway and Paric will be analyzed in detail in Section III below.

The parties have agreed to resolve the lien priority dispute via cross-motions for summary judgment. In its Motion For Summary Judgment, Mellon argues it has a superior lien because it became subrogated to Weston's priority deed of trust when it paid the remainder of Weston's loan on Gateway's behalf. Mellon cites established Missouri law which holds that a purchase money deed of trust lien has priority over a mechanic's lien incurred in the renovation of a building on the encumbered land.

In its Motion For Summary Judgment Paric claims priority as a mechanic lien claimant by virtue of Section 429.060 of the Revised Missouri Statute, commonly referred to as the First Spade Rule. Under the First Spade Rule, a properly filed mechanic's lien relates back to the date any of the work commenced. Paric claims that it commenced work on the Merchandise Mart as early as January, 1986, and therefore it has a superior lien to Mellon's which was recorded on June 16, 1986. Additionally, Paric claims that Mellon waived its priority lien on the Merchandise Mart because Mellon knew Paric worked on the building and could potentially accrue a mechanic's lien.

On the basis of these Motions, and the numerous pleadings and exhibits that have been filed in connection therewith, this Court denies Mellon's Motion for Summary Judgment on the issue of priority and grants so much of Paric's Motion as is premised upon the allegation that Mellon waived its security interest in favor of Paric. Thus, Mellon's Motion is denied and Paric's Motion is granted.

DISCUSSION [1]

I. Introduction

■ In resolving the priority of lien conflict between Mellon and Paric, this Court looks to Missouri state law. While Congress, by grant from Article 1, Section 8 of the United States Constitution, has created nationally uniform bankruptcy laws which predominate over conflicting state laws, state laws are suspended only to the extent of actual conflict with the Federal Bankruptcy system. *In re Justice v. Valley Nat. Bank,* 849 F.2d 1078, 1084 (8th Cir. 1988) (*citing Butner v. United States,* 440 U.S. 48, 54–55, 99 S.Ct. 914, 917–918, 59 L.Ed.2d 136 (1979)). The Bankruptcy Code

---

**1.** This Memorandum Opinion and Order is written under the assumption that Paric has a valid and enforceable mechanic's lien against the Merchandise Mart. The Court will address the issue of the validity and amount of Paric's lien in a subsequent Opinion.

is silent on the issue of priorities among conflicting mechanic and purchase money deed of trust lienholders. Thus, in the absence of conflict with federal interests, state law governs the question of property rights. *Justice* at 1084.

"Property rights are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interest should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both State and federal courts within a state serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving 'a windfall merely by reason of happenstance of bankruptcy' ". *Johnson v. First Nat. Bank of Montevideo, Minn.*, 719 F.2d 270, 274 (8th Cir.1983) (*citing Butner*, 440 U.S. at 55, 99 S.Ct. at 918).

The right of a mechanic to assert a lien originates in Missouri statutory law. It is exclusively a creature of statute and the right to enforce it derives solely from legislative enactment. *In re Herbert & Brooner Construction Co. v. Golden*, 499 S.W.2d 541, 545 (Mo.App.1973). A mechanic's lien is a remedy in the nature of a charge on the land to secure a priority of payment for the performance of labor or the supply of materials to buildings, or other improvements, to be enforced against the particular property in which they have become incorporated. *In re Herbert & Brooner Construction Co.* at 545. Missouri lien statutes are based on and justified by the principle that those who have contributed labor or material to the improvement of property are entitled to look to the property for compensation. *Id.* at 545, (*citing Putnam v. Heathman*, 367 S.W.2d 823, 828 (Mo.App.1963)).

The relevant mechanic lien laws of Missouri are codified in R.S.Mo. §§ 429.050 and 429.060. R.S.Mo. § 429.050 provides, in relevant part:

The [mechanic's] lien for the things aforesaid, or work, shall attach to the building, erections or improvements for which they were furnished or the work was done, in preference to any prior lien or encumbrance or mortgage upon the land upon which said buildings, erections, improvements or machinery have been erected or put; and any person enforcing such lien may have such buildings, erections, or improvements sold upon execution, and the purchaser may remove the same within a reasonable time thereafter ...

This statute, which provides that mechanic's liens shall be given preference to any prior lien on the land, has been limited in application to new construction and does not apply to mechanic's who claim liens based on improvements to existing buildings. *Trout's Investments, Inc. v. Davis*, 482 S.W.2d 510, 515 (Mo.App.1972).

On the other hand, R.S.Mo. § 429.060 provides:

The lien for work and materials as aforesaid shall be preferred to all other encumbrances which may be attached to or upon such buildings, bridges or other improvements, or the ground, or either of them, subsequent to the commencement of such buildings or improvements.

This statute, commonly referred to as the First Spade Rule, provides that a mechanic's lien, properly filed, dates from visible commencement of actual operations performed on the ground for the making of improvements. *Drilling Service Co. v. Baebler*, 484 S.W.2d 1, 9 (S.Ct.Mo.1972). The theory behind this rule is that "the fact of the improvement gives its own notice to all the world (and it) works no injustice to anyone dealing with the property, as the work itself is notice to all of the mechanics' claims. It enables them by ocular examination to ascertain whether they can do so (buy or take a mortgage) safely." *Id.* at 9.

Thus a delicate balance exists in ascertaining the priority rights granted by these two statutes. Mechanics who renovate a building lose their priority against the holder of a lien on the real property, but if the mechanic commences work prior to the acquisition of that mortgage, then the mortgagee takes second to the mechanic's lien, as the mortgagee is deemed to have notice of the mechanic's lien claim.

The issue is further complicated by a series of cases which hold that to the extent a mortgagee holds a purchase money deed of trust to secure the repayment of funds used to purchase real property upon which a building was constructed or renovated, the deed of trust has priority over a mechanic's lien. *Allied Pools, Inc. v. Sowash*, 735 S.W.2d 421, 427 (Mo.App.1987). Thus, a purchase money deed of trust takes priority over a mechanic's lien even if the deed of trust was executed after the construction of the improvements commenced.

Unlike the line of cases interpreting R.S.Mo. § 429.050, however, this series of Missouri cases fails to distinguish between mechanic liens incurred by the erection of a new building and those incurred as a result of renovations on an existing building. Nor, for that matter, are we able to determine whether *anyone* who refinances a mortgage assumes the priority retained by the purchase money deed of trust holder or if, eventually, a subsequent mortgagee's lien falls junior to a mechanic lien claimant.

This morass is clarified by the doctrines of equitable subrogation and waiver. The former is an equitable doctrine which permits one party to be substituted to the rights and powers of another if equity warrants. *State Sav. Trust Co. v. Spencer*, 201 S.W. 967 (Mo.App.1918). The latter doctrine, although not expressly equitable in nature, nonetheless focuses on a just result. The doctrine of waiver holds that a mortgagee, by reason of having induced the furnishing of labor and material, may be precluded from asserting the priority of the mortgage over a mechanic's lien. *Drilling Service Co. v. Baebler*, 484 S.W. 2d 1, 10 (S.Ct.Mo.1972). Thus, a second mortgagee may only assume the priority rights of a purchase money deed of trust lienholder if it is equitable to do so. And if that second mortgagee has knowledge of, or induces, a mechanic to engage in construction on the encumbered premises, he loses any priority rights he may have in favor of the mechanic's lien claim.

While these laws and doctrines may evade precise illustration, the fundamental and underlying policy is that mechanic lien laws have equity as their basis and purpose. Their aim is to do substantial justice between the parties. *Putnam v. Heathman*, 367 S.W.2d 823, 828 (Mo.App.1963), and the trend in Missouri is to favor valid mechanic's liens.

II. Was Mellon subrogated to the rights of Weston's Purchase Money Deed of Trust?

■ Mellon claims it has priority over Paric's mechanic lien as a purchase money deed of trust lienholder. A purchase money deed of trust which secures repayment of funds used to purchase land has priority over mechanics' liens accrued by construction on the encumbered property. *Allied Pools, Inc. v. Sowash*, 735 S.W.2d 421 (Mo. App.1987); *Westinghouse Electric Co. v. Vann Realty Co.*, 568 S.W.2d 777 (S.Ct.Mo. 1978); *Joplin Cement Co. v. Greene Co. B. & L. Assn.*, 228 Mo.App. 883, 74 S.W.2d 250 (1934). Mellon claims that it has a purchase money deed of trust (to the extent of its payment to Weston) because it paid Weston, the first mortgagee, the remainder of the money owed to it by Gateway: "On June 16, 1988 when Mellon Bank by wire transfer of $1,280,833.33 to Weston paid off the remaining amount of the Weston loan, Mellon Bank became subrogated to the extent of the rights and priorities under its [Weston's] prior deed of trust ... As a result, Mellon Bank's deed of trust takes priority over all of the mechanic's liens as to the first $1,280,833.33 of Mellon Bank's loan to the Debtor." *Memorandum in Support of Mellon Bank, N.A.'s Motion For Summary Judgment On The Issue Of Priority Brief*, p. 7. Thus Mellon asserts that by paying the balance of the Weston loan, Mellon became subrogated to Weston's position as a purchase money deed of trust lienholder to the extent of such payment.

Paric does not dispute the principle that a purchase money deed of trust lien is superior to a mechanic's lien. Nor does Paric dispute that Weston has a secured lien. Rather, Paric argues that Mellon did not become subrogated to Weston's right as a superior lienholder when Mellon paid

the $1,280,833.33 to Weston. This Court agrees.

The laws pertaining to subrogation are equitable in nature, originating in the venerable case of *State Sav. Trust Co. v. Spencer*, 201 S.W. 967, 969 (Mo.App.1918):

"Subrogation is the substitution of another person in the place of the creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt. The doctrine is one of equity and benevolence and like contribution and similar equitable rights, was adopted from the civil law, and its basis is the doing of complete, essential and perfect justice between all the parties without regard to form, and its object is the prevention of injustice. The right does not necessarily rest on a contract or privity, but upon principles of natural equity, and does not depend upon the act of the creditor, but may be independent of him, and also of the debtor".

Consistent with its equitable nature, court's have been reluctant to liberally permit one party to be subrogated to the rights of another. Rather, the doctrine of equitable subrogation has been restricted to limited circumstances. *Landmark Bank v. Ciaravino*, 752 S.W.2d 923, 927 (Mo.App.1988) (*citing Bunn v. Lindsay*, 95 Mo. 250, 7 S.W. 473 (1888)). The doctrine of equitable subrogation is to be applied only according to the dictates of equity, good conscience, and consideration of business policy and according to established legal rights. *In re Jamison's Estate*, 202 S.W.2d 879, 883 (S.Ct.Mo.1947). It does not depend on privity or contract, express or implied, except insofar as the known equity may be supposed to be imported into the transaction. *State Sav. Trust Co.* at 970. Thus, courts employ a flexible approach in applying the doctrine of equitable subrogation based upon the equities of each case. Often the decisive factor is fraudulent conduct, gross negligence or a mere technical impediment to the completion of a common objective.

In *State Sav. Trust Co., supra*, the court addressed the issue of whether a lender was entitled to be subrogated to the rights of a first deed of trust holder when it paid that lien under false representations that the holder of a third deed had agreed to subordinate his lien in the lender's favor. The court permitted the lender to be subrogated to the rights of the first deed of trust holder, stating that it would be a manifest injustice to do otherwise.

The fraud, then, was the decisive factor in permitting equitable subrogation. Indeed, after reviewing numerous equitable subrogation cases, the Missouri Court of Appeals in the Eastern District concluded that equitable subrogation is allowed only in "extreme cases bordering on if not reaching the level of fraud." *Landmark Bank v. Ciaravino*, 752 S.W.2d 923, 928 (Mo.App.1988).

In *Landmark* the landowners acquired multiple loans, each secured by a deed of trust. Landmark Bank, which was secured by the fourth and fifth deeds of trust, paid the second deed without actual knowledge of the third deed, in spite of the fact that Landmark conducted a title search of the property. The court prohibited Landmark from being subrogated to the rights of the second lienholder, charging Landmark with knowledge of the recorded third deed of trust pursuant to Section 442.390 of the Revised Missouri Statutes, 1986. In so holding the court looked to *State Sav. Trust Co. v. Spencer, supra*, interpreting that case to require more to support equitable subrogation than the impact of equitable subrogation on superior, as well as inferior, liens.

Thus, this Court must consider factors other than the *effect* of permitting or prohibiting Mellon to be subrogated to Weston's priority purchase money deed of trust in deciding whether or not to permit the subrogation to take place. Facts indicating that some grave injustice might occur without subrogation will be persuasive. The issue is to be determined from the acts and declarations of the parties and from the surrounding circumstances. *Neer v. Neer*, 80 S.W.2d 240, 242 (Mo.App.1935). The burden of proof in such a case falls on the party seeking subrogation. This party

must show by clear and convincing evidence that as between himself and another party, the other party should endure the loss. *Frago v. Sage*, 737 S.W.2d 482, 483 (Mo.App.1987).

Mellon has failed to meet this burden. Mellon offers little rationale as to why this Court should permit it to be subrogated to Weston's priority deed of trust. Mellon's basic argument is that as a purchase money deed of trust lienholder, Mellon has priority over the claims of mechanics who merely renovate existing buildings. Thus Mellon offers as a conclusion of law that which it should be proving by facts.

In support of its assertion that it has a purchase money deed of trust priority lien, Mellon cites several cases. These cases, however, are clearly distinguishable from the instant case. Furthermore, it is apparent that the court in each case based its decision as to whether or not to permit equitable subrogation on the equities of the specific case. In *State Sav. Trust Co. v. Spencer*, 201 S.W. 967 (Mo.App.1918), the court concluded that subrogation was warranted because fraud had been perpetrated upon the party seeking subrogation. In *Frazier v. Crook*, 204 S.W. 392 (S.Ct.Mo. 1918), the court again permitted subrogation because all interested parties had agreed to permit subrogation. They had merely been prohibited by technical difficulties. In the remaining two cases cited by Mellon, *Butts v. Swan*, 217 Mo.App. 451, 269 S.W. 1 (1925), and *Sears v. Patterson*, 54 Mo.App. 278 (1893), the courts permitted equitable subrogation because all the parties had agreed to it.

In the instant case no such agreement exists between Mellon and Weston. Nor did Paric enter such an agreement. While Gateway agreed to give Mellon a priority security interest in the Merchandise Mart, Paric did not agree to subordinate its mechanic's lien claim to Mellon's. Consequently it would be inequitable for this Court to permit two parties, Mellon and Gateway, to unilaterally sever the rights of a third party, Paric. This is especially true since Mellon had knowledge of Paric's employment and of the possibility that Paric would assert a mechanic's lien against the Merchandise Mart.

Mellon knew that Paric would serve as the General Contractor for the renovation of the Merchandise Mart. In fact, Mellon sought background and financial information from Paric prior to, and as a precondition of, the loan to Gateway. Additionally, the Construction Loan Agreement between Mellon and Gateway directly refers to Paric as the General Contractor. Paric is identified as the General Contractor in the Definition section of the Construction Loan Agreement, and is referred to throughout. Furthermore, Mellon incorporated into the Construction Loan Agreement a proviso that should Gateway fail to pay Paric, Mellon would reserve the option of paying Paric directly. § 2.01(e). Finally, the preamble of the Construction Loan Agreement states that the purpose of the loan is:

> "to defray the cost of acquiring the aforementioned real property and *renovating* and *refurbishing* the said building. (emphasis added).

Thus Mellon knew prior to the formulation of the Construction Loan Agreement that the Merchandise Mart Building was to be rehabilitated by Paric as General Contractor and that Paric could assert a mechanic's lien against the Merchandise Mart should Gateway default on the payments.

Mellon does not deny that it knew of Paric's employment as General Contractor. Rather, Mellon argues that both Gateway and Mellon intended to grant it a superior lien. Mellon further asserts that Paric knew of this arrangement. Consequently, according to Mellon this Court should permit Mellon to be subrogated to Weston's priority lien in order to effectuate the parties' intent. This Court, however, declines to do so. In knowing that Paric was employed as the General Contractor, Mellon knew Paric would be paid for its labor and material. Thus, Mellon has not fallen victim to any wrongdoing and there is no compelling reason to invoke the doctrine of equitable subrogation. This is especially true in light of the predominating policies favoring mechanic's liens. In order to effectuate the intent of the Missouri statu-

tory scheme, this Court will not invoke equity to implement the designs of Mellon and Gateway at Paric's expense unless there is some compelling reason for doing so. In the instant case, there is none.

Finally, there is no evidence indicating whether the $1,280,833.33 paid to Weston by Mellon was for the purpose of paying Weston for the loan advanced to Gateway to purchase the Merchandise Mart, or to repay Weston for the April, 1986 advance. In *Allied Pools, Inc. v. Sowash*, 735 S.W.2d 421, 427 (Mo.App.1987), the court refused to reach a conclusion on the issue of priorities between a purchase money deed of trust holder and a mechanic lien claimant because it was uncertain whether or not the applicant really had a purchase money deed of trust. The court could not discern from the evidence presented whether the loan proceeds were actually used to purchase the real property upon which the mechanic constructed a swimming pool. Similarly, this Court does not know whether the funds provided by Mellon were used to purchase the Merchandise Mart. Consequently, there is no basis for this Court to conclude that Mellon has even taken the first step towards subrogation. That is, Mellon has not shown that its money actually went toward the purchase of the Merchandise Mart.

In conclusion, Mellon does not have a purchase money deed of trust lien on the Merchandise Mart. The equities of the surrounding circumstances lead this Court to believe that Mellon should not be subrogated to Weston's priority purchase money deed of trust lien. Mellon's Motion for Summary Judgment, therefore, is DENIED.

III.   Did Mellon waive its priority in favor of Paric's mechanic's lien?

■■■   Under the doctrine of waiver a mortgagee, by reason of having induced the furnishing of labor and materials, may be precluded from asserting the priority of the mortgage over a mechanic's lien. *In re H.B. Deal v. Labor Discount Center, Inc.,* 418 S.W.2d 940, 952 (S.Ct.Mo.1967) (*citing*

*Magidson v. Stern,* 235 Mo.App. 1039, 148 S.W.2d 144, 153 (1941)). The lender who takes a deed of trust to secure his loan made to finance the early stages of the improvement runs the risk of his security becoming impaired by mechanics' liens resulting from work done or material furnished in connection with later stages of the same improvement. *In re Drilling Service Co. v. Baebler,* 484 S.W.2d 1, 12 (S.Ct.Mo.1972). This is not to penalize an early lender but is for the purpose of securing to those persons who supply labor and material to the improvement the rights which the mechanic's lien might afford to them. *Id.* at 12. Thus, the law of waiver is consistent with Missouri statutes governing priority between mechanic's liens and mortgages (§ 429.050 R.S.Mo.) and often provides results independent from that which the parties contracted. "The general rules governing priority between mechanic's liens and mortgages ordinarily are deemed applicable notwithstanding the loan secured by the mortgage was made with the purpose, understanding, or expectation that the proceeds thereof would be used in improving the property or the mortgage was given to secure a debt for work done on, or materials furnished for, the building." *H.B. Deal* at 952, (*citing* 57 C.J.S. Mechanics' Liens, Section 201, p. 760).

In ascertaining whether a secured lender has waived his priority lien in favor of a mechanic's lien, courts employ the following test: where a loan is made for a construction project under knowledge and contemplation that the mechanic's and materialmen's liens can rise from project construction, the lender is deemed to have waived the claim of priority of its deed of trust as to such mechanic's and materialmen's liens. *Cinco Enterprises, Inc. v. Lake St. Louis Estates Company, Inc.,* 557 S.W.2d 9, 10 (Mo.App.1977) (*citing In re Drilling Service Co. v. Baebler,* 484 S.W.2d 1 (Mo.App.1972). Thus, in the Missouri Court of Appeals for the Eastern District a secured lender need only have knowledge of the construction giving rise to a mechanic's lien to be deemed to have

waived his priority position.[2]

In *In re Drilling Service Co., supra,* the court noted that the lender not only knew of the landowner's intent to construct apartment units, the lender provided the money for building those apartments as well. Clearly, the court concluded, the lender had actual knowledge that buildings were to be constructed. Additionally, the lender knew that the employment of subcontractors and workmen was contemplated, and that mechanics and materialmen whose labor and materials create the improvements might be expected to file mechanic liens against the property if the bills were not paid. *In re Drilling Service Co.* at 10. Under these circumstances, the *Drilling Service Co.* court concluded, the lender is in no position to insist upon the subordination of the mechanic's and materialmen's liens and is taken to have waived any claim of priority. *In re Drilling Service Co.,* at 11.

Similarly, the court in *H.B. Deal, supra,* concluded that "where repairs to existing buildings were made and materials furnished not only with the knowledge and consent of the mortgagee, but also with his active cooperation, pursuant to an agreement between owner and the mortgagee ... then the mechanic's lien for the unpaid balance due for labor and material going to improvements are to be held superior to the lien at the existing first deed of trust." *H.B. Deal·* at 953.

In the instant case, Paric presented numerous uncontested indicia of Mellon's knowledge that Paric, as General Contractor, could accrue mechanic's liens. These are:

1. The preamble of the Construction Loan Agreement between Mellon and Gateway states that the purpose of the loan is to "defray the cost of ... renovating and refurbishing the said buildings."

2. In the Definition section of the Construction Loan Agreement, Article I, the General Contractor is specifically identified as Paric Corporation and Paric is referred to throughout.

3. Section 2.01 of the Construction Loan Agreement speaks specifically of the $21,-600,000.00 to be provided to Gateway from Mellon, the proceeds of which were to be advanced for the Improvements. ("Improvement" is defined in Article I of the Construction Loan Agreement as the refurbishing and renovation to be made to the Merchandise Mart). Additionally, Section 2.01(d) states that loan advances for the purpose of defraying the cost of construction were to be assessed and distributed by Mellon. Mellon further reserved the right to make advances directly to the party supplying labor and materials (Paric). § 2.01(e).

4. Section 4.01(s) of the Construction Loan Agreement provides that Gateway is to furnish *Mellon* with a copy of the General Construction Contract (the contract between Gateway and Paric), setting forth in detail as *Mellon* may require, costs for each class of work. (emphasis added).

5. Section 5.05 of the Construction Loan Agreement requires that Gateway is to provide Mellon with status reports regarding the progress of the Improvements.

6. Section 6.05 of the Construction Loan Agreement restricts Gateway's right to terminate or modify the General Construction Contract between Gateway and Paric.

Additionally, the following factors were influential in this Court's finding that Mellon had knowledge of Paric's activities and therefore waived any priority lien. First, as a condition of the Construction Loan Agreement between Mellon and Gateway, Mellon required Paric to be the General Contractor. (*D'Amico Depo.* pp. 17, 19). Mellon investigated Paric's reputation in the St. Louis community and Paric provided

---

2. The decision of the *Drilling Service Co.* and *H.B. Deal* courts are controlling as they are handed down by the Missouri Supreme Court. There is a split in the law between the Courts of Appeal in the Western and Eastern Districts of Missouri. The Western District (as is evidenced by *Kranz v. Centropolis Crusher, Inc.,* 630 S.W.

2d 140 (Mo.App.1982)) requires more than knowledge to effectuate a waiver. This Court, however, follows the law as stated in *Cinco Enterprises, Inc. v. Lake St. Louis Estates Co.,* 557 S.W.2d 9 (Mo.App.1977) which merely requires knowledge to effectuate a waiver.

information to Mellon in furtherance of that effort. (*Simon Depo.* pp. 36, *D'Amico Depo.* pp. 18, 19 and *Spicher Depo.* pp. 7–8). Furthermore, Mellon monitored the costs accrued by Paric, (*D'Amico Depo.* p. 26), by verifying that funds distributed by Mellon were actually extended. (*D'Amico Depo.* p. 9). This verification was conducted by on-site inspections by Mr. Simon, Mellon's construction engineer. (*Simon Depo.* p. 10). Mr. Simon would view the construction site for two to three hours at a time. (*Simon Depo.* p. 16). Mr. Simon would then bring any deficiencies to the attention of the contractors. (*Simon Depo.* p. 11). Mr. Simon would next approve or disapprove, or modify, amounts requested in furtherance of the construction effort. (*Simon Depo.* p. 16). Mr. D'Amico, Vice President and Loan Production Officer at the Pittsburgh Branch of Mellon Bank, would defer to Mr. Simon's judgment regarding the amount to be approved for each advance. (*D'Amico Depo.* p. 23). Finally, Mellon required in its Construction Loan Agreement with Gateway that it receive copies of any change-orders from Gateway, even when those change-orders involved the mere reallocation of budget amounts. (*D'Amico Depo.* p. 28).

Thus, not only did Mellon have knowledge of Paric's involvement in the Merchandise Mart renovation, but Mellon was an active participant in Paric's role as General Contractor. Mellon therefore, satisfies the waiver test in that it advanced a loan to Gateway. for a construction project with knowledge that a mechanic's lien could arise from the construction project.

Mellon responds to Paric's waiver argument by citing Section 4.01(s)(b) of the Construction Loan Agreement between Mellon and Gateway which provides that the General Construction Contract shall contain, *inter alia,* the following provision:

> a complete subordination to the mortgage of all claims and liens which the general contractor on any subcontract could or may file against the premises.

Thus, Mellon argues, it is Paric who waived its priority mechanic lien in Mellon's favor because Paric knew that Gateway had granted Mellon the superior lien.[3] This Court notes, however, that the agreement was only between Mellon and Gateway. At no time did Paric agree to subordinate its mechanic's lien to that of Mellon's. As stated above, parties may not unilaterally sever another's rights without the latter's consent. While Mellon may argue that Paric waived its priority mechanic's lien by having *constructive* knowledge of Mellon's priority lien, Mellon is deemed to have *actual* knowledge of Paric's potential lien. Therefore, Mellon has *actually* waived its priority. This Court is not at liberty to import exceptions to statutes such as § 429.050 which favors the liens of general contractors because of disappointed expectations by the mortgagee concerning the security which he expected to receive. *In re H.B. Deal,* at p. 952.

█ Mellon also argues that this Court should not grant Paric's Motion For Summary Judgment because there are insufficient facts supporting Paric's waiver argument. In a motion for summary judgment the court must scrutinize the record in a light most favorable to the party against whom the motion for summary judgment was filed and against whom the judgment was rendered, and must accord that party the benefit of the doubt. If a genuine issue of fact exists summary judgment cannot be granted. A genuine issue of fact exists when there is the slightest doubt

---

**3.** In support of its argument, Mellon refers to Paragraph 10 of the Consent to Collateral Assignment of Construction Contract and Agreement of Contractor (hereinafter the "Consent Contract") signed by Paric on June 16, 1986, which states:

> "Nothing herein shall be construed to impose upon Lender (Mellon) any duty to advance funds to Borrower (Gateway) except upon and subject to the terms of the Loan Agreement ..."

Mellon understands this provision to constitute an express consent by Paric to all the terms and conditions of the Construction Loan Agreement between Mellon and Gateway. In contrast, however, this Court interprets the provision as an agreement by Paric that the Consent Contract shall *not modify* the terms of the Construction Loan Agreement. Paric did not agree to be bound by those terms.

about the facts. The fact in doubt, however, must be a *material* fact which has legal probative force as to the controlling issue. *Union Electric Co. v. Clayton Center, Ltd.*, 634 S.W.2d 261, 262 (Mo.App. 1982).

In the instant case the material fact in consideration is whether Mellon had knowledge of Paric's employment. Paric has provided numerous indicia of Mellon's knowledge that Paric was renovating the Merchandise Mart and would therefore assert a mechanic's lien should Gateway default on the payments. These facts were uncontested by Mellon. This Court, therefore, finds that there is no genuine issue of *material* fact still at issue and Mellon is deemed to have waived its lien on the Merchandise Mart in Paric's favor. Paric's Motion on the issue of waiver, then, is GRANTED.

IV. Did Paric commence sufficient work under the First Spade Rule to attain a superior lien?

Section 429.060 of the Revised Missouri Statutes states that:

the lien for work and materials as aforesaid shall be preferred to all other encumbrances which may be attached to or upon such buildings, bridges or other improvements, on the ground or either of them, subsequent to the commencement of such buildings or improvements.

This is the First Spade Rule which holds that a properly filed mechanic's lien relates back to the date any of the work commenced. The visible commencement of permanent work which provides sufficient notice to all potential lenders that a mechanic's lien could materialize as the result of nonpayment for work undertaken constitutes commencement of the work sufficient to satisfy the First Spade Rule. The function of § 429.060, then, is to give notice to a prospective lender that at the time the loan is made there are materialmen and laborers who expect to be paid. *In re Drilling Service Co.* at 9.

In the instant case Mellon recorded its security interest on June 16, 1986. The General Construction Contract between Paric and Gateway was executed on June 1, 1986. Although fullscale work on the project did not commence until June 23, 1986, Paric argues that it commenced "investigative" demolition as early as January and February of 1986. While Paric acknowledges that this may not constitute permanent work, Paric nonetheless argues that Mellon had notice of Paric's work once Paric commenced the investigative demolition as early as January, 1986. According to Paric the removal of old building materials from a buildings interior provides sufficient notice upon visual inspection of the commencement of work.

This court need not reach further conclusions pertaining to this issue as Paric's Motion For Summary Judgment is GRANTED on other grounds.

The Court concludes that Mellon's Motion For Summary Judgment is DENIED and Paric's Motion For Summary Judgment is GRANTED, in part.

Accordingly, it is so ORDERED.