**In re EXEC TECH PARTNERS, Debtor.**

**EXEC TECH PARTNERS, Plaintiff,**

**v.**

**BOATMEN'S BANK OF KANSAS f/k/a, First Continental Bank & Trust et al., Defendants.**

Bankruptcy No. 93–50636–ABF.
Adversary No. 94–4151–ABF.

United States Bankruptcy Court,
W.D. Missouri.

Nov. 17, 1995.

731

Max Jevinsky, Berman, DeLeve, Kuchan & Chapman, Kansas City, MO, for Plaintiff.

Kip Stetzler, Kansas City, MO, for Defendants.

Thomas J. Fritzlen, Kansas City, MO for RTC Mortgage Trust 1994–N2.

Janet Davis Baker, Overland Park, KS for BGM Industries, Inc.

Theodore Becker, Kansas City, MO for D.M. Ward Construction Co.

Michael P. Keleher, Gladstone, MO for Edwards McDowell, Inc.

Cynthia F. Grimes, Kansas City, MO for Mark One Electric Co.

### MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Bankruptcy Judge.

This adversary proceeding involves the priority of a mechanic's lien filed by D.M.

Ward Construction Company, Inc. ("Ward"). Plaintiff Exec Tech Partners, debtor in this Chapter 11 case, owns two office buildings ("Tech Buildings A and B") in Kansas City, Missouri. Ward holds a validly filed and duly perfected mechanics' lien on Tech Buildings A and B. Defendants Boatmen's Bank of Kansas f/k/a First Continental Bank and Trust ("Boatmen's"), and Resolution Trust Company as receiver for Home Federal Savings Association of Kansas City, now RTC Mortgage Trust 1994–N2, acting by and through its servicer AMRESCO Management, Inc. (the "RTC") hold valid Deeds of Trusts on such property. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (K), and (O) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). For the reasons set forth below, I find that Ward's mechanic's lien in the amount of $144,837.97 has priority over the liens of Boatmen's and the RTC.[1] I further find that Boatmen's Deed of Trust in the amount of $1,400,624.00 is superior to the RTC's Deed of Trust, by virtue of a Subordination Agreement. This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law.

## FACTUAL BACKGROUND

Tech Buildings A and B were purchased by debtor on December 29, 1989. At that time the buildings were subject to a Deed of Trust in favor of the Home Savings Association of Kansas City ("Home Savings") in the amount of $17,500,000.00. Debtor and Home Savings executed an Assumption and Modification Agreement at the time of purchase which reduced the indebtedness due Home Savings to $4,000,000.00. Not surprisingly given that reduction, Tech Buildings A and B were largely empty and needed substantial work in order to be rentable to tenants.

In 1992 debtor was the successful bidder to lease space to the Military Entrance Processing Station. Debtor sought funds to finance the tenant finish and improvements required by the General Services Administration ("GSA") under such lease. Debtor also engaged defendant Ward as the general contractor to provide the tenant finish and improvements, pursuant to a lump sum contract in the amount of $1,650,000.00. Such contract provides for additions and deductions pursuant to change orders. Ward Ex. # 2.

The RTC, as receiver for Home Savings, held the only Deed of Trust on the property, but chose not to make the tenant improvements loan to debtor. However, the RTC did agree that it would subordinate its Deed of Trust to a new lender for the tenant improvements to the extent of $1,650,000.00. First Continental Bank & Trust ("First Continental"), which has since been purchased by Boatmen's, agreed to loan debtor $1,650,000.00 for the tenant improvements if the RTC's Deed of Trust were subordinated to Boatmen's Deed of Trust on the property. As a result, on November 12, 1992, the RTC and First Continental entered into a Subordination Agreement.[2] Additionally, a Joint Disbursing Agreement was entered into among debtor, First Continental, Ward, American Land Title Company, and The Gaw Company, which served as debtor's architect

---

1. Pursuant to a settlement agreement announced at the opening of the trial, the Ward lien includes liens held by subcontractors Edward McDowell, Inc. in the amount of $14,525.63, and BGM Industries, Inc. in the amount of $5,244.52. All parties, including the debtor, agreed to the validity of such subcontractors' claims. In addition, Ward does not dispute that its lien includes a lien of subcontractor Mark One Electric Co., Inc. in the amount of $11,262.72. The debtor disputes the validity of the Mark One lien. A separate Order has been entered as to Mark One.

2. The Subordination Agreement provides in relevant part as follows:
   *Subordination of the Existing Deed of Trust.* The Existing Deed of Trust, all liens and security interests granted to or created in favor of Home Savings (now held by RTC) thereunder,

and all of RTC's rights, title and interest thereunder are hereby made and shall hereafter be subject and subordinate in all respects to the New Deed of Trust, all liens and security interests granted to or created in favor of Bank [First Continental now Boatmen's] thereunder and all of Bank's rights, titles and interests thereunder, provided however that this subordination shall be limited to the maximum amount of $1,650,000.00 representing the amount of Bank's lien to Borrower in connection with the Premises. From and after the execution of this Agreement, the New Deed of Trust shall have priority over the Existing Deed of Trust until such time as Borrower's indebtedness to the Bank is paid in full.
Ward Ex. # 61 ¶ 1 at 3.

on the project, to assure all the parties that the funds for construction would be properly disbursed. Ward Ex. 3. Pursuant to the Joint Disbursing Agreement and the Subordination Agreement debtor and Ward submitted draw requests to the title company, which then ran a title search for new liens and sent the results of that search, along with the draw request, to a representative of Boatmen's. Boatmen's retained its own Inspection Architect, whose name is Don Rosemann. After each draw request was made, Mr. Rosemann recommended that disbursement be made. That recommendation, along with the draw request, was then transmitted to Mr. Doug Mayo of Towle Heskin Partners, representative for the RTC. Unless the RTC representative objected within two business days after receipt of the draw request, the disbursement was made. Thus, both Boatmen's and the RTC were aware of the project, and approved disbursements for the project.

The project ended up costing more than the parties had anticipated, due primarily to construction changes requested by GSA, compliance with City Code requirements, and additional costs to relocate an existing tenant. The GSA made additional requests which necessitated change orders costing a total of $324,500.00. In order to pay for the GSA requests, Boatmen's agreed to loan an additional $324,000 to the debtor. The loan was made on December 15, 1993, and was secured by a Certificate of Deposit pledged by the debtor, not by a Deed of Trust on debtor's real estate. The RTC, through its representative, Towle Heskin Partners, approved draw request # 7 which increased the cost of the project from $1,548,000.00 to $1,872,520.00. Ward Ex. # 48. The loan for $324,000.00 has been paid in full.

Additional change orders were then required after city inspectors found certain code violations. These change orders total $139,837.97, and remain unpaid. There is also an unpaid retainage of $5,000.00, therefore, Ward has filed and duly perfected a mechanic's lien against Tech Buildings A and B in the amount of $144,837.97. The parties stipulated that materials were provided to the debtor by Ward, that the labor was performed by Ward, that the value of debtor's real estate was enhanced thereby, and that Ward has a valid mechanic's lien in the amount of $144,837.97. The balance now due Boatmen's pursuant to the loan secured by the Deed of Trust is $1,400,624.00.

Since the parties have stipulated to the validity of Ward's mechanic's lien in the amount of $144,837.97, the only issue to be decided in this proceeding is the relative priority of the mechanic's lien, the RTC's Deed of Trust, and Boatmen's Deed of Trust.

## DISCUSSION

■ Mechanic's liens are encumbrances on real property "to secure a priority of payment for the performance of labor or the supply of materials to buildings, or other improvements." *In re Gateway Center Building Investors, Ltd.,* 95 B.R. 647, 650 (Bankr.E.D.Mo.1989) (citations omitted). Mechanic's liens were unknown at common law, *Clearail, Inc. v. Mardirossian Family Enterprises,* 84 Md.App. 497, 581 A.2d 36, 38 (Md.Ct.Spec.App.1990), *rev'd on other grounds, Mardirossian Family Enterprises v. Clearail, Inc.,* 324 Md. 191, 596 A.2d 1018 (1991), therefore, any right to assert a mechanic's lien is created by state statute. *Gateway* at 650. In Missouri the relevant mechanic's lien laws are codified in Missouri's Revised Statutes §§ 429.050 and 429.060. Section 429.050 provides:

The lien for the things aforesaid, or work, shall attach to the buildings, erections or improvements for which they were furnished or the work was done, in preference to any prior lien or encumbrance or mortgage upon the land upon which said buildings, erections, improvements or machinery have been erected or put; and any person enforcing such lien may have such buildings, erections or improvements sold under execution, and the purchaser may remove the same within a reasonable time thereafter; provided, that nothing contained in this section shall be so construed as to allow any such sidewalk as is mentioned in sections 429.010 to 429.340 to be sold under execution or so removed.

Mo.Stat.Ann. § 429.050 (1992). In order to prevent the owner of an existing building from contracting for tenant improvements—

without the mortgagee's consent—which could result in a lien prior to the lien of the mortgagee, this statute is ordinarily limited in application to new construction. *Gateway*, 95 B.R. at 650 (citing *Trout's Investments, Inc. v. Davis*, 482 S.W.2d 510, 515 (Mo.Ct. App.1972)). Thus the holder of a prior Deed of Trust would ordinarily maintain its priority over a mechanics lien for later improvements to an existing building.

■ However, the holder of a Deed of Trust can be found to have waived its priority as to improvements to an existing building. *Gateway*, 95 B.R. at 651. *Trout's Investments, Inc. v. Davis*, 482 S.W.2d at 517. The issue here is whether Boatmen's and/or the RTC so waived their priority.

■ One case holds that "a mortgagee, by reason of having induced the furnishing of labor and material, may be precluded from asserting the priority of the mortgage over a mechanic's lien." *Gateway*, 95 B.R. at 651. The test for determining what constitutes inducement is stated as follows: "where a loan is made for a construction project under knowledge and contemplation that the mechanic's and materialman's liens can rise from project construction, the lender is deemed to have waived the claim of priority of its deed of trust as to such mechanic's and materialman's liens." *Id.* at 654. In other words, if a mortgagee provides the funds to engage a contractor to provide the tenant finish to a building, said mortgagee cannot then defend against mechanic's liens by claiming priority based upon a prior mortgage.

■ It is undisputed that Boatmen's made a construction loan for the tenant improvements required by the GSA. Indeed, the Subordination Agreement between Boatmen's and the RTC states that "said loan is being used by Borrower for leasehold improvements to Building A and also to allow for the transfer of certain tenants from Building A to Building B." Dep.Ex. # 6, ¶ 4. Similarly, the RTC does not dispute that it had knowledge of the loan from Boatmen's and that the proceeds of the loan were being used to perform the tenant finishes to Tech Buildings A and B. The RTC argues that knowledge of the improvements alone is not

enough to waive its lien. But even the case cited by RTC for that proposition states that liens do not have to be explicitly waived, provided there is active involvement on the part of the mortgagee. *Genesis Engineering Co., Inc. v. Hueser*, 829 S.W.2d 579, 580 (Mo.Ct.App.1992).

The RTC was, or had the right to be, actively involved in this project. The RTC reserved the right to approve the architect and engineer for the leasehold improvements, to approve each construction draw, to receive a copy of the plans and specifications for the tenant improvements, to receive a list of the subcontractors, to receive a cost breakdown, to receive the draw schedule, and to receive copies of all change orders. Dep. Ex. # 6, ¶ 4. This right to be actually involved can constitute inducement. *See*, *Trout Investments, Inc. v. Davis*, 482 S.W.2d 510, 517 (Mo.Ct.App.1972) (holding that where the bank had full knowledge of the remodeling, exercised control over the loan funds, and was aware that unpaid bills of the contractor were lienable, the bank induced the contractor to provide labor and materials).

■ The trend in Missouri is to favor valid mechanic's liens. *Gateway*, 95 B.R. at 651. Whether a mortgagee waives its right to a superior lien is a finding of fact. *Union Elec. Co. v. Clayton Center Ltd.*, 634 S.W.2d 261, 263 (Mo.Ct.App.1982); *Byron J. Myers, Inc. v. Bradbury*, 595 S.W.2d 724, 728 (Mo. Ct.App.1980). The Lump Sum Contract did not limit Ward to labor and materials in the amount of $1,650,000.00. The RTC agrees the work was properly performed and was necessary to complete the project. Any cost overruns resulted from change orders properly endorsed by those in authority. Further, the work performed by Ward increased the value of Tech Buildings A and B to the benefit of debtor, Boatmen's, and the RTC.

RTC offered evidence intended to show that its only function in approving disbursements was to determine whether there were remaining loan proceeds sufficient to pay the draw. It was only when those proceeds had all been spent, the RTC seems to say, that it learned that the project would cost more than anticipated. Certainly this is not a case where the owner blindsided a mortgagee by

contracting for tenant improvements without approval. RTC was—or had the right to be—actively involved in the project. Dep. Ex. # 6, ¶ 4.

For all of the above reasons, I find that both Boatmen's and the RTC waived the priority of their Deeds of Trust as to the tenant improvements, and that the Ward's mechanic's lien has priority ahead of such Deeds of Trust.

■ The RTC next asserts that it never consented to subordinate its lien to Boatmen's disbursements in excess of $1,650,-000.00. The RTC seems to say that since the project ended up costing more than $1,650,-000.00, its position should not be affected by the extra cost represented by the mechanic's lien. I note that the RTC did not bring a cross-claim against Boatmen's challenging the relative priorities of their liens. I note also that the balance due Boatmen's pursuant to the loan and Deed of Trust is now $1,400,-624.00. Even with the mechanic's lien of $144,837.97, the liens ahead of RTC are less than $1,650,000.00. More importantly, though, the Subordination Agreement between Boatmen's and the RTC does not control the priority of the mechanic's lien. Missouri law provides that the mechanic's lien goes to the top of the pile. Mo.Stat.Ann. § 429.050 (1992) And, the Subordination Agreement determines that Boatmen's is next in priority since its claim is less than $1,650,000.00. Therefore, the RTC's priority is below that of Ward and Boatmen's.

Lastly, the RTC argues that its Deed of Trust provides for reimbursement of attorneys' fees and expenses incurred in defense of a mechanic's lien filed against the subject property. RTC's Ex. # 2. The Deed of Trust does so provide, but such fees and expenses will be allowed as part of the RTC's secured claim only to the extent the RTC is oversecured. 11 U.S.C. § 506(b). Therefore, the RTC's claim for attorney's fees will be denied without prejudice to its being reasserted after the Court determines the value of its collateral.

To summarize. The mechanic's lien filed by Ward in the amount of $144,837.97 has priority over the Deeds of Trust of the RTC and Boatmen's. Boatmen's Deed of Trust is next in priority in the amount of $1,400,-624.00. The Deed of Trust of the RTC is junior to both the mechanic's lien and the Boatmen's Deed of Trust.

An Order in accordance with this Memorandum Opinion will be entered this date.