No. 96-2353

In Re Exec Tech Partners, a    *
Missouri General Partnership    *
   *
      Debtor.    *
   *
   *
_____    *
   *
   *
Exec Tech Partners, a Missouri    *
General Partnership,    *
   *
      Plaintiff/Appellee,    *
   *    Appeal from the United States
          v.    *    District Court for the Western
   *    District of Missouri.
Resolution Trust Corporation,    *
   *
      Defendant,    *
   *
Mark One,    *
   *
      Interested Party/Appellee,    *
   *
Boatmen's Bank of Kansas,    *
   *
      Interested Party,    *
   *
BGM Industries, Inc.; D. M. Ward    *
Construction Company, Inc.;    *
Edwards McDowell, Inc.,    *
   *
      Interested Parties/    *
      Appellees,    *
   *
Myron W. Haith,    *
   *
      Interested Party,    *
   *
RTC Mortgage Trust 1994-N2, by    *
and through its servicer    *
Amresco Management, Inc.,    *
   *
      Defendant/Appellant.    *

Submitted: January 15, 1997

Filed: February 27, 1997
_____

Before BOWMAN and MURPHY, Circuit Judges, and JONES,[1] District Judge.

_____

MURPHY, Circuit Judge.


This case involves the relative priority in bankruptcy of a mechanic's lien and two deeds of trust. Upon filing bankruptcy, Exec Tech Partners (Exec Tech) initiated this action to determine the relative priority of its creditors. The bankruptcy court[2] concluded that the mechanic's lien held by D.M. Ward Construction Co. (Ward) had priority over two prior deeds of trust, one of which was held by RTC Mortgage Trust (RTC). The district court[3] affirmed, and RTC appeals from the finding that it waived its priority.[4] We affirm.

In 1989, Exec Tech purchased two buildings by assuming the obligations under a deed of trust held by Home Savings Association of Kansas City (Home Savings). RTC later became the receiver for

_____

[1] The Honorable John B. Jones, United States District Judge for the District of South Dakota, sitting by designation.

[2] The Honorable Arthur B. Federman, United States Bankruptcy Judge for the Western District of Missouri.

[3] The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri.

[4] At the outset of this litigation, RTC and Boatmen's Bank of Kansas (Boatmen's) each held separate deeds of trust on the property held by Exec Tech. The bankruptcy court concluded that the deed of trust held by Boatmen's took priority over that held by RTC pursuant to a subordination agreement between the two. Counsel for RTC noted at oral argument that RTC has recently acquired the second deed of trust previously held by Boatmen's. It is therefore not necessary for us to consider the relative priority between the deeds of trust.

Home Savings and is now the obligee under the deed of trust.

In 1992, Exec Tech won a bid to lease the buildings to the Military Entrance Processing Station. In order to perform the bid, the buildings needed extensive renovation. RTC chose not to lend Exec Tech the money needed for the renovation, but agreed to subordinate $1,650,000 of its deed of trust to a new lender so that Exec Tech could obtain financing for the project. First Continental Bank & Trust, which has since been purchased by Boatmen's, loaned Exec Tech $1,650,000. The loan was secured by a second deed of trust. First Continental, now Boatmen's, and RTC entered into a subordination agreement for the amount of the loan.

RTC actively monitored the construction project. Under the subordination agreement between RTC and Boatmen's, RTC:

> 1. received the construction plans, specifications, a list of subcontractors, a draw schedule and a cost breakdown by subcontractor,
> 2. reviewed each draw request and was able to object to any draw request,
> 3. received copies of any change orders.

In addition, the record shows RTC was aware that Ward was the general contractor for the project, RTC approved the architect and the engineer for the project, and RTC was kept abreast of the construction progress by a representative of Exec Tech.

Particularly relevant to this appeal is how funds were disbursed for the project. RTC approved ten separate draw requests for project funds. The last draw request approved by RTC was submitted on December 9, 1993, and in it Ward stated that the construction was 100% complete. Ward was also required to sign a lien waiver concurrently with any payment it received. Ward signed lien waivers for each payment received under the first ten draw requests.

The present dispute centers on Ward's last request for payment. On March 11, 1994, Ward submitted an additional change order to Exec Tech for $144,837.97, representing changes required to complete the project plus Ward's retainage fee. This work on the changes was completed before December 9, 1993 and was not included in any of the first ten draw requests. RTC never approved a disbursement, and Ward never signed a lien waiver for this final amount. When Ward was not paid, it filed and perfected a mechanic's lien for the entire $144,837.97.

The parties stipulated to the validity of Ward's mechanic's lien, and the only question on appeal is the relative priority of the mechanic's lien and the deeds of trust. Like the district court, we review the bankruptcy court's legal conclusions de novo and its factual findings under the clearly erroneous standard. Montgomery v. Ryan (In re Montgomery), 37 F.3d 413, 414-15 (8th Cir. 1994). Absent an overriding federal law, the existence and magnitude of valid claims against a debtor are determined by state law, which in this case is that of Missouri. See Speer v. Weathers (In re Weathers), 40 B.R. 634, 638 (Bankr. W.D. Mo. 1984).

Mechanic's liens are encumbrances on real property "to secure a priority of payment for the performance of labor or the supply of materials to buildings, or other improvements." In re Gateway Ctr. Bldg. Investors, Ltd., 95 B.R. 647, 650 (Bankr. E.D. Mo. 1989) (citations omitted). Normally the holder of a prior deed of trust would maintain its priority over a mechanic's lien for later improvements to an existing piece of property. Id. at 650. The holder of a prior deed of trust can waive its priority over a mechanic's lien, however, even over a mechanic's lien based on improvements to existing property. Id. at 651. Whether waiver has occurred is a question of fact. Kolb Grading, Inc. v. Lieberman Corp., 837 S.W.2d 924, 934 (Mo. Ct. App. 1992).

In general, a mortgagee waives its priority when it induces

-4-

the furnishing of labor or material by the materialmen.  Trout Invs., Inc. v. Davis, 482 S.W.2d 510, 517 (Mo. Ct. App. 1972).  At least two cases have held that knowledge of the construction giving rise to a mechanic's lien is sufficient to find that a lender has waived its priority over the mechanic's lien.  See Gateway, 95 B.R. at 654-55; Cinco Enters., Inc. v. Lake St. Louis Estates Co., 557 S.W.2d 9, 10 (Mo. Ct. App. 1977).  Other cases seem to require that the lender have knowledge of the construction and participate actively in the project.  See, e.g., Genesis Eng'g Co. v. Haueser, 829 S.W.2d 579, 580 (Mo. Ct. App. 1992); Kranz v. Centropolis Crusher, Inc., 630 S.W.2d 140, 147-50 (Mo. Ct. App. 1982).

There is no one precise test for waiver because waiver is an equitable doctrine without a rigid legal formula.  Kranz, 630 S.W.2d at 147.  The bankruptcy court found that RTC and Boatmen's had waived their priority because both knew about the construction project and participated in it.  Examination of the record shows that these findings of waiver are not clearly erroneous.

RTC waived its priority because it had knowledge of the construction and was an active participant in the renovation project.  It agreed to subordinate its deed of trust to make the project loan possible.  It could have expected ultimately to benefit from the project by an increase in the value of the collateral securing its deed.  Under the subordination agreement between RTC and Boatmen's, RTC received a copy of the plans and specifications of the renovation, a list of subcontractors, and a copy of the draw schedule.  RTC also reserved the right to object to any draw request, and it received copies of any change orders.  RTC approved the architect and the engineer associated with the project, knew Ward had been selected as the general contractor, and was kept informed about the status and progress of the construction by one of Exec Tech's partners, Myron Haith.  RTC waived its priority because its extensive involvement in the project induced Ward to provide the necessary material and labor.

RTC argues it did not knowingly waive its priority because its approval of the draw requests was procured by misrepresentation. Specifically, RTC alleges that Ward's certification in the tenth draw request that the construction was complete was fraudulent because it knew there remained work to be billed. RTC also alleges that it was led to believe that liens could not be filed for any of the work performed by Ward. RTC did not raise a misrepresentation claim in the trial court, in this case the bankruptcy court. RTC did devote a portion of its district court brief to the misrepresentation theory, but the district court did not specifically address that claim in its opinion.

Generally, this court will not review an issue not raised at trial, unless to do so would result in a miscarriage of justice or a substantial injustice. Unigroup, Inc. v. O'Rourke Storage & Transfer Co., 980 F.2d 1217, 1222 (8th Cir. 1992); Kern v. Prudential Ins. Co., 293 F.2d 251, 259 (8th Cir. 1961). It would not result in a miscarriage of justice or a substantial injustice to decline to consider RTC's claims of misrepresentation. RTC induced Ward to provide labor and material for the project before the alleged misrepresentations concerning the disbursement process occurred. Even assuming Ward's certification of completeness in the tenth draw request was inaccurate, such a finding would not negate a conclusion that RTC waived its priority by its earlier knowledge and actions.

Moreover, RTC's misrepresentation claims are not supported by the facts. RTC argues Ward's certification that the construction was 100% complete was fraudulent because Ward knew there remained work orders to be submitted. But testimony at trial indicated that it is not unusual for a general contractor to submit additional bills after the project is completed because expenses often continue to be tabulated after the actual construction is finished. Although there may be a dispute about whether this work was authorized by the construction contract, Ward simply certified that

-6-

the project was complete on December 9, 1993, not that it had submitted its final bill. RTC may not have realized that additional bills would be submitted, but it does not follow that RTC's approval of previous disbursements was procured by misrepresentation.

RTC also argues Ward is estopped from asserting the priority of its lien because Ward was required to sign lien waivers for each payment it received. Each draw request form approved by RTC stated lien waivers would be obtained from Ward before, or concurrently with, the disbursement of funds. Unlike the case relied upon by RTC, Ward never signed a lien waiver for the work that is the subject of the lien. See Herbert & Brooner Construction Co. v. Golden, 499 S.W.2d 541, 546 (Mo. Ct. App. 1973). Ward only signed lien waivers when it received payment for its work. Since Ward never signed a waiver for the work in dispute here, it is not estopped from claiming its lien has priority.

RTC also argues that the subordination agreement between Boatmen's and RTC cannot form the basis for waiver because Ward was unaware of the subordination agreement and therefore could not have been induced to provide labor and material by its terms. It is not the terms of the subordination agreement that induced Ward, however, but the fact that it provided funding.

RTC contends that if waiver is premised on the subordination agreement, its waiver should be limited by the terms of that agreement. Since RTC only agreed to subordinate $1,650,000 to Boatmen's deed of trust, it should not be deemed to have waived its priority for more than that amount. A subordination agreement is to be interpreted according to ordinary contract principles. In re General Homes Corp., 134 B.R. 853, 864 (Bankr. S.D. Tx. 1991). A contract generally binds no one except the parties. Continental Cas. Co. v. Campbell Design Group, Inc., 914 S.W.2d 43, 44 (Mo. Ct. App. 1996). Ward was not a party to the subordination agreement,

and RTC has not articulated why Ward's claims against Exec Tech should be limited by an agreement between two separate creditors. While the subordination agreement demonstrates RTC knew about and participated in the project, Ward's claims against Exec Tech are not limited by the terms of a separate agreement between RTC and Boatmen's.

For these reasons, the judgment giving priority to the mechanic's lien is affirmed.

A true copy

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.