ALLIED POOLS, INC., Respondent,

v.

Robert and Shirley SOWASH, Respondent,

Paul Degenhardt, Trustee, Appellant,

First National Bank of Gladstone, Appellant,

Lakey Custom Building, Inc. Respondent.

No. 38773.

Missouri Court of Appeals, Western District.

Aug. 4, 1987.

Larry K. Enkelmann, Gladstone, for appellants.

Eugene F. DeShazo, Kansas City, for respondents.

Before TURNAGE, P.J., and BERREY and GAITAN, JJ.

GAITAN, Judge.

Plaintiff-respondent, Allied Pools, Inc., constructed a swimming pool for defendants Robert and Shirley Sowash in the backyard of their residence. Allied was never fully paid for its services, and therefore filed a mechanic's lien statement on September 12, 1984. Allied filed suit to enforce its mechanic's lien on March 4, 1985, naming as defendants, Robert and Shirley Sowash, owners, Lakey Custom Building, Inc., claimant of a mechanic's lien, and Paul Degenhardt, trustee, and First National Bank of Gladstone, cestui que trust, under a deed of trust. Prior to trial, Lakey settled its cross-claim against the Sowashes with First National and Paul Degenhardt. Allied received a mechanic's lien judgment against Robert and Shirley Sowash for $19,154.85 plus interest, which the trial court found to be superior to the deed of trust held by First National.

First National and Paul Degenhardt appeal, stating that the trial court erred in denying their motion to dismiss Count I because Allied failed to meet the statutory requirements for a mechanic's lien judgment pursuant to Chapter 429 of the Missouri Revised Statutes. In their second point, appellants claim that the trial court erred in awarding attorney's fees to plaintiff as a part of the mechanic's lien judgment. The judgment of the trial court is reversed and remanded for further proceedings consistent with this opinion.

FACTS

Robert and Shirley Sowash, husband and wife, entered into a contract with Lakey Custom Building, Inc. for the purchase of real estate and the construction of a new house at 7312 N.W. Nevada, Kansas City, Missouri, Platte County, Lot 3, Block 3, Countrywood subdivision. First National Bank provided a construction loan to the Sowashes. On June 12, 1984, Robert and Shirley Sowash executed a deed of trust in favor of First National Bank to secure the construction loan. The deed of trust was recorded in the Office of Recorder of Deeds of Platte County on June 13, 1984.

Sometime in April, 1984, Bob and Shirley Sowash met with representatives of Allied in order to discuss the construction of a pool by Allied in the Sowashes' backyard at 7312 N.W. Nevada. Eventually, on June 11, 1984, Bob Sowash signed a written contract with Allied for the construction of a pool. Shirley Sowash did not sign the written contract. Prior to June 11, 1984, Bob and Shirley Sowash had numerous meetings with Allied regarding the size, shape and type of pool they wanted. Shirley Sowash participated in all these meetings and acted with Robert in directing the location, the size, and various other details regarding the pool, and the landscaping surrounding the pool.

Prior to June 11, 1984, Michael Lynch, president of Allied, made arrangements to meet with Robert and Shirley Sowash to

execute a pool construction contract. Shirley Sowash was present but indicated that Robert was sick and could not sign the contract. On June 11, 1984, Gretchen Lynch, a representative of Allied, delivered the construction contract to the Sowashes' office according to an appointment made by Mr. Lynch where both Robert and Shirley Sowash were to sign the contract. Only Robert Sowash was present and he signed the contract and gave Gretchen Lynch a check for $10,000 as down payment. That check was drawn on R & S Management and Real Estate Company, a corporation or partnership located in Dallas, Texas and wholly-owned by Robert and Shirley Sowash.

The evidence showed that Yardworks, a subcontractor of Allied, began excavation of the pool on June 7, 1984. By June 12, 1984, the date the deed of trust was executed, 15½ hours of excavation work had been completed. All necessary construction materials, including fiberglass panels, a pump and filter, heater, reinforcing bars and 75 timbers to be used in the retaining wall, were delivered to the Sowashes' home on or before June 11, 1984.

On or about July 18 or 19, 1984, Brian Parrish, a representative of Yardworks, went to the Sowashes' home at 7312 N.W. Nevada regarding extra landscaping work requested by the Sowashes. Shirley was present, but Robert was not there. Mr. Parrish was informed by Shirley that her husband thought the additional work was to be included in the contract price and she would not agree to sign the amendment. The next day, Robert Sowash agreed to the amendment and initialed the amended proposal.

The construction of the pool was completed on July 27, 1984. During the construction of the pool, Shirley was frequently present at the house. She regularly discussed pool landscaping details, and changes in the deck surrounding the pool with Allied workers.

On August 13, 1984, Michael Lynch delivered a final statement regarding the pool construction to the Sowash residence in order to be paid the remaining balance.

The trial court found that the invoice delivered to the Sowashes showed an amount due of $29,154.85, and that a final figure of $19,154.85 was agreed upon as the amount due. The trial court granted Allied a mechanic's lien in the amount of $19,154.85, and declared the lien to be superior to First National's deed of trust.

## I. PROPRIETY OF GRANTING MECHANIC'S LIEN

### A. Notice to Owners

Appellants allege that Lakey was the legal owner of the real estate until June 12, 1984. Therefore, appellants allege that Allied is not entitled to a mechanic's lien because it failed to give Lakey notice, as required by § 429.012 RSMo, that a mechanic's lien could be filed. Appellants also allege that once Robert and Shirley Sowash became the owners of the property, Allied never entered into a contract with the owners of the real estate as required by § 429.010, since Shirley never signed the contract.

■ Appellants' argument are without merit. Lakey and the Sowashes entered into a contract for the sale of the real property on November 13, 1983. It is not clear from the record when Lakey actually conveyed legal title to the property to the Sowashes. In the cross-claim which Lakey filed against the Sowashes to establish a mechanic's lien, Lakey alleged that the Sowashes owned the real property as early as November 15, 1983. At least it appears that the Sowashes held equitable title to the property under the contract for sale by the time that Allied began construction of the pool. Equitable ownership is sufficient to sustain a mechanic's lien. *Joplin Cement Co. v. Greene County Building & Loan Assn.*, 224 Mo.App. 1064, 34 S.W.2d 529 (1931).

There is no dispute that Allied gave the required notice to the Sowashes. There also is no dispute that Allied contracted with the Sowashes, not Lakey, for the construction of the pool. Section 429.012 requires an original contractor to give notice to "the person with whom the contract is

made." Since Allied never made a contract with Lakey, Allied did not have to give Lakey the notice.

We also disagree with FNB's argument that Allied did not contract with the owners because Shirley Sowash did not sign the written contract. We find that the property may be subject to a mechanic's lien due to the implied agency authority of Roger to bind Shirley on the contract.

■ In order to impose a mechanic's lien upon entirety property based upon implied agency, there must be joint participation in the construction, evidenced by knowledge of and active involvement in the project. *Turner v. Hoffmeier,* 690 S.W.2d 188, 189 (Mo.App.1985); *Kenny's Tile and Floor Covering, Inc. v. Curry,* 681 S.W.2d 461, 466–67 (Mo.App.1984). A spouse's knowledge of, and passive acquiescence in, the construction is not sufficient to establish the contracting spouse's agency authority. *E.C. Robinson Lumber Co. v. Lowrey,* 276 S.W.2d 636, 640 (Mo.App.1955). Nor does the fact that a spouse makes suggestions or expresses approval regarding the work establish an agency relationship. *Id.*

■ In this case, Shirley Sowash actively participated throughout the project in making decisions regarding the location, size, and type of pool, as well as specifically directing details as to the landscaping and deck surrounding the pool. Her conduct was more than acquisecence or suggestions, but amounted to active direction of the project. As the court in *Magidson v. Stern,* 235 Mo.App. 1039, 148 S.W.2d 144, 151 (1941) explained:

> [I]f the facts ... are such as to show that the wife dealt actively with the person furnishing the labor and material, and as frequently happens, assisted in raising funds for the doing or completion of the work, then her conduct, even if not of a character to have bound her personally to pay for the labor and material going into the work, will at least be held sufficient to have transmitted to the person furnishing the labor and material the right to have a lien upon the premises.

We therefore find that Allied had a contract with Bob and Shirley Sowash such that a mechanic's lien may be imposed upon their real property held as tenants by entireties.

**B. Mechanic's Lien Statement**

Appellants claim that the mechanic's lien statement filed by Allied is inadequate in five respects: (1) mortgagees were not listed; (2) the Sowashes, though listed as owners, were not identified as husband and wife; (3) legal description was inaccurate; (4) the date the work began is wrong; and (5) the statement was not sufficiently itemized.

Section 429.080 RSMo 1986 has four requirements of a lien statement: (a) a true account of the demand; (b) a true description of the property, or so near as to identify the same; (c) the name of the owner or contractor, or· both if known to the person filing the lien; and (d) verification.

■ The statutory elements just recited do not include those items which appellant insists are necessary. While the statute requires the statement to include the name of the owner, it was held in *R.L. Sweet Lumber Co. v. E.L. Lane, Inc.,* 513 S.W.2d 365 (Mo. banc 1974), that the holder of a deed of trust is not an "owner" as that term is defined in § 429.150 RSMo. Since under *Sweet,* the holder of a deed of trust is not included in the definition of owner under § 429.150, we find that the mortgagees are not required to be listed as an owner under § 429.080.

■ We find no requirement in § 429.-080 that Robert and Shirley Sowash must be listed as husband and wife in the lien statement, and appellants cite us to no authority for imposing such a requirement. This alleged shortcoming is not sufficient grounds for finding that Allied is not entitled to a mechanic's lien.

■ Though the legal description incorrectly identified the subdivision as "Country" rather than "Country Wood", any confusion is cleared up by the fact that the street address is correctly stated as well as the owners. Under Missouri law, the description of the property need not be perfect. *Paradise Homes, Inc. v. Helton,* 631

S.W.2d 51, 53 (Mo.App.1981). The description is sufficient where enough appears in the statement to enable one familiar with the locality to identify the intended premises. *Hertel Electric Co. v. Gabriel,* 292 S.W.2d 95, 99 (Mo.App.1956). It would be improper to penalize Allied and vitiate the remedial purpose of the mechanic's lien statement for what amounts to a harmless typographical error. *R.L. Sweet Lumber Co. v. E.L. Lane, Inc.,* 513 S.W.2d 365, 371 (Mo. banc 1974).

■ While Allied failed to itemize the account owed, this point was raised on appeal for the first time. Even so, Allied as an original contractor, entered into a lump sum contract with additions as the work progressed. The lien statement reflects the lump sum for the pool and itemizes all charges for extra work · or material. Where the lien claimant is an original contractor, like Allied, and the contract with the owner is for a lump sum, the account may be stated in a lump sum rather than itemized. *State ex. rel. Saint Francois Building & Loan Assoc. v. Reynolds,* 288 Mo. 522, 232 S.W. 1035 (1921). More recently in *Zundel v. Edge, Inc.,* 705 S.W.2d 113 (Mo.App.1986), this court stated that "unless the lien claimant is an original contractor who has made a lump sum contract with the landowner ..." he must itemize. Allied was an original contractor that made a lump sum contract.

Appellant's argument concerning the date listed in the mechanic's lien statement is made for the purpose of challenging Allied's reliance upon the "first spade rule." Under the first spade rule, a properly filed mechanic's lien dates from the visible commencement of actual work performed upon the property. *Drilling Service Co. v. Baebler,* 484 S.W.2d 1 (Mo. 1972). Allied's evidence at trial showed that excavation for the pool began on June 7, 1984 and almost all materials necessary for construction were delivered prior to June 11, 1984. Allied's mechanic's lien statement stated that the work commenced on June 26, 1984, as did Allied's original petition and amended petition. Allied was allowed to amend its amended petition to

state that the work commenced on June 7, 1984.

We have determined that Allied has met the requirements of Chapter 429 to establish its mechanic's lien, and are left with the question of when Allied's lien commenced. Appellants argue that Allied is bound by the June 26, 1984 date listed in its lien statement. Therefore, appellants claim that they have priority over Allied's lien because their deed of trust was executed prior to June 26, 1984. Appellants go on to argue that even if Allied is allowed to rely upon the June 7, 1984 date, Allied's lien is inferior because appellants hold a purchase money deed of trust.

■ We find that Allied may rely upon the June 7th date which its evidence disclosed. Section 429.080 RSMo requires only that a lien claimant file a just and true account. "There is no precise definition of a just and true account in mechanic's lien cases. Whether or not a lien statement is a just and true account depends upon the particular facts of each case." *S & R Builders & Suppliers, Inc. v. Marler,* 610 S.W.2d 690, 697 (Mo.App.1980). A lien statement which contains unintentional mistakes or omissions due to inadvertence, accident or oversight, may still support a lien. *Miners Lumber Co. v. Miller,* 117 S.W.2d 711 (Mo.App.1938); *Woodling v. Westport Hotel Operating Co.,* 227 Mo. App. 1231, 63 S.W.2d 207 (1933). The purpose of the statement is to allow the landowner and others to learn whether the labor and materials allegedly supplied actually went into the building or improvement, whether the items were lienable, and whether the amounts charged were proper. *Wadsworth Homes, Inc. v. Woodridge Corp.,* 358 S.W.2d 288, 291 (Mo.App.1962).

■ We find that Allied's statement was a just and true account which, due to an oversight, contained an erroneous date. We think that the remedial purpose of the mechanic's lien laws are best served if we allow Allied's lien to date from the true date upon which construction commenced as shown by the evidence. The rationale of the "first spade rule", that a lender is put on notice of potential liens by visible con-

struction, is compelling. It would be unfair to bind Allied to the erroneous date listed in its account when appellants could have learned of Allied's potential lien by examining the property prior to June 12, 1984.

To the extent that First National holds a purchase money deed of trust to secure the repayment of funds used to purchase the land upon which the pool was constructed, however, the deed of trust has priority over Allied's mechanic's lien. *See Westinghouse Electric Co. v. Vann Realty Co.,* 568 S.W.2d 777, 781 (Mo. banc 1978); *R.L. Sweet Lumber Co. v. E.L. Lane, Inc.,* 513 S.W.2d 365, 367 (Mo. banc 1974); *Joplin Cement Co. v. Greene County Bldg. and Loan Assn.,* 228 Mo.App. 883, 885, 74 S.W.2d 250, 251 (1934). This is true even if the deed of trust was executed after construction of the pool was commenced. *Joplin Cement Co.,* 74 S.W.2d at 251.

It appears that the Sowashes entered into a contract of sale for the real property at issue here with Lakey. First National loaned money to the Sowashes and received a deed of trust. While appellants claim that they hold a purchase money deed of trust, we cannot discern from the evidence presented whether the loan proceeds actually were used to purchase the real property upon which the pool was constructed. If so, then appellants' deed of trust is superior as to the real property, even though Allied's lien relates back to June 7, 1984. If the loan proceeds were not used to purchase the real property, then Allied's lien is superior to the deed of trust under § 429.060 RSMo and the "first spade rule", since we have determined that the lien relates back to June 7, 1984. We therefore reverse and remand this case for further proceedings to determine whether appellants hold a purchase money deed of trust as to the real property upon which the pool was constructed.

## II. ATTORNEY FEES

Appellants also challenge the trial court's providing for attorney fees as part of the mechanic's lien judgment. Aside from the issue of whether the trial court had authority to grant attorney fees as part of the mechanic's lien judgment, there was no evidence presented to support the $14,000.00 judgment for attorney fees. Further, unless authorized by statute or by a court of equity in certain cases, attorney fees are personal in nature and depend upon a contract. *Pine Lawn Bank & Trust v. Urbahns,* 417 S.W.2d 113, 119 (St.L.Ct. of App.1967). No such contract existed here.

The judgment of the trial court is reversed and remanded for further proceedings consistent with this opinion.

All concur.