**FIRST BANC REAL ESTATE, INC., Respondent,**

v.

**Ivan L. JOHNSON, et al., Appellants.**

**No. WD 70741.**

Missouri Court of Appeals, Western District.

June 1, 2010.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 27, 2010.

Application for Transfer Denied Oct. 26, 2010.

Ronald K. Barker, Lee's Summit, MO, for appellants.

Eric G. Kraft, Overland Park, KS, for respondent.

Before Division One: KAREN KING MITCHELL, Presiding Judge, LISA WHITE HARDWICK, Judge and CYNTHIA L. MARTIN, Judge.

CYNTHIA L. MARTIN, Judge.

Ivan and Marie Johnson (hereinafter the "Johnsons") appeal from the trial court's judgment denying enforcement of their mechanic's lien and equitable lien against residential property they had at one time been under contract to purchase. The Johnsons contend that the trial court erred: (1) in holding that the Johnsons did not have a valid and enforceable mechanic's lien due to their failure to provide a "notice to owner" in the form and style required by section 429.012.1; [1] (2) in holding that the Johnsons did not have a valid and enforceable equitable lien for earnest money deposits and additional sums paid to assist with construction of a residence they were under contract to purchase; and (3) in holding that even if the Johnsons did have a valid and enforceable equitable lien, it was foreclosed by Gold Bank's foreclosure of one of its deeds of trust. We affirm.

## Factual and Procedural Background[2]

This case is illustrative of the pitfalls and landmines inherent in residential construction when financial risks are perilously undertaken by purchasers who lack an appreciation of the complexities of real estate law.

On March 27, 2000, Sanctum, LLC (hereinafter "Sanctum") acquired land it later platted as the Siena at Longview subdivision in Lee's Summit, Missouri (hereinafter the "Siena Subdivision"). On October 30, 2000, Sanctum obtained a construction loan from Gold Bank[3] for the

1. All statutory references are to RSMo 2000 as supplemented unless otherwise indicated.

2. This matter was submitted to the trial court on a Stipulation of Facts and with the benefit of Stipulated Exhibits. Though some testimony was taken on the day of trial, that testimony was very brief. On appeal, this court reviews the stipulated facts in the light most favorable to the respondent and disregards inferences favorable to the appellant. *State ex*

*rel. Nixon v. Jordan*, 258 S.W.3d 529, 531 (Mo.App. W.D.2008). All other evidence is viewed in the light most favorable to the trial court's judgment. *Estate of Thompson v. Hicks*, 148 S.W.3d 32, 35 (Mo.App. W.D. 2004). .

3. During the timeframe relevant to this matter, Gold Bank subsequently became known

Siena Subdivision in the amount of $619,750.00. This loan was secured by a deed of trust on the Siena Subdivision (hereinafter "Gold Bank First Deed of Trust"). On March 15, 2001, Sanctum obtained a second construction loan from Gold Bank in the amount of $1,723,000.00. This loan was also secured by a deed of trust on the Siena Subdivision (hereinafter "Gold Bank Second Deed of Trust"). On June 28, 2002, Sanctum obtained a third construction loan from Gold Bank in the amount of $448,000.00 for work to be performed on Block 1 of the Siena Subdivision. This loan was also secured by a deed of trust on at least a portion of the Siena Subdivision (hereinafter the "Gold Bank Third Deed of Trust").

On June 29, 2002, the Johnsons entered into a Residential New Construction Sale Contract (hereinafter "Construction Contract") with Sanctum. The Construction Contract obligated Sanctum to construct a residence on Lot 7B in the Siena Subdivision for the Johnsons (hereinafter the "Property"). The Construction Contract then obligated Sanctum to sell, and the Johnsons to buy, the Property for $317,600.00. Sanctum was, therefore, both the seller of the Property as the owner of legal title to the Property and the builder obliged to construct the residence for the Johnsons.

The Gold Bank Third Deed of Trust was recorded July 3, 2002, a few days after the Construction Contract was executed. All three Gold Bank Deeds of Trust encumbered the Property.

At the time of execution of the Construction Contract, the Johnsons paid Sanctum a $1,000.00 earnest money deposit. The Construction Contract required the Johnsons to pay Sanctum an additional earnest money deposit in the amount of $62,720.00 on August 1, 2002. The Johnsons made this payment. The collective earnest money deposits were treated by the Construction Contract as an advance payment to be applied toward the agreed purchase price for the Property.

The Construction Contract described the residence to be constructed for the Johnsons, including agreed options, finish allowances, and a schedule for completion. The Construction Contract obligated Sanctum, as the builder, to "supervise, direct and coordinate the construction" of the residence on the Property and to "obtain all materials, supplies, labor and other items necessary to complete the construction" of the residence. The Construction Contract also provided that Sanctum "shall have full responsibility and authority to select, contract and otherwise deal with all materialmen, suppliers, laborers, and subcontractors to be used in the construction" of the residence. Notwithstanding these provisions in the Construction Contract, Sanctum and the Johnsons agreed that the Johnsons could purchase some of the materials needed to construct the residence directly and that the Johnsons could hire third parties to perform some of what would otherwise have been work undertaken by Sanctum in the Construction Contract. Sanctum and the Johnsons agreed that the cost of any materials or labor paid for directly by the Johnsons would be treated as a credit against the purchase price the Johnsons were otherwise obligated to pay Sanctum.[4] This "understanding"

as M & I Marshall & Isley Bank. We will, however, refer to this party as "Gold Bank."

4. The record does not reveal exactly how this arrangement benefitted the Johnsons. There was some testimony that the Johnsons agreed to coordinate some of Sanctum's required

work because Sanctum did not have anyone lined up to perform the work. There was also some testimony that the Johnsons wanted to coordinate some of the work in order to more cost effectively upgrade certain construction elements in the residence.

was not documented in writing. During the course of construction, the Johnsons purchased materials and paid for labor for work performed on the residence in the amount of $57,517.86.

At some point after construction of the Johnsons' residence began, Sanctum secured a loan from First Bank of Medicine Lodge (hereinafter "FBML") in the amount of $525,000.00. The loan was to be used for construction activities on the Property and for the adjacent property on Lot 7A. The loan was secured by a deed of trust on the Property and (presumably) on Lot 7A (hereinafter the "FBML Deed of Trust"). Gold Bank did not release any of its Deeds of Trust as encumbrances on the Property when the FBML Deed of Trust was recorded.

The Construction Contract required the Johnsons' residence to be completed by November 15, 2002. However, the Johnsons encountered numerous delays with Sanctum. The first time a closing was scheduled was on April 1, 2004, a year and a half after the promised completion date. In anticipation of closing, the Johnsons began moving personal items into the residence. However, closing did not occur on April 1, 2004. Though numerous other closing dates where thereafter scheduled, closing never occurred. Title to the Property was never transferred to the Johnsons. The record does not provide a clear explanation for Sanctum's failure to close, though the suggestion is that Sanctum was unable to secure necessary releases from Gold Bank and FBML as to enable Sanctum to convey clear title to the Johnsons.

Beginning July 20, 2004, and continuing through August 17, 2004, the successor trustee under the Gold Bank Second Deed of Trust advertised the entire Siena Subdivision for sale at foreclosure. The notice advertised the Siena Subdivision for sale in parcels or as a whole. Foreclosure of the Siena Subdivision proceeded on August 17, 2004. Gold Bank was the only bidder. Gold Bank later assigned its interest in the Siena Subdivision to Regional Properties, Inc. (hereinafter "Regional").[5]

The Johnsons received notice of the foreclosure sale approximately six weeks prior to the sale. The Johnsons attended the foreclosure sale with their counsel. The Johnsons did not offer a bid on the Property at the foreclosure sale. However, on the day of, and just prior to, the sale, the Johnsons filed a Notice of Equitable Lien against the Property claiming an equitable lien in the amount of $102,000.00.

On September 14, 2004, the Johnsons recorded a Notice of Lis Pendens on the Property, identifying the matter of *Johnson, et al. v. Todd Kane, et al.,* case no. 04CV–226086, pending in the circuit court of Jackson County, Missouri at Independence.

On September 30, 2004, Regional transferred Lot 7A and the Property to First Banc Real Estate, Inc. (hereinafter "FBRE") by a special warranty deed. The record suggests that no monetary consideration was paid by FBRE to Gold Bank for the transferred property. The deed was not recorded until December 13, 2004. FBRE is a subsidiary of FBML.

On November 17, 2004, the Johnsons sent a Notice of Mechanic's Lien to Sanctum, Siena Development, LLC,[6] and

5. Foreclosure of the Gold Bank Second Deed of Trust foreclosed the Gold Bank Third Deed of Trust and the FBML Deed of Trust, as both were inferior liens. The Gold Bank First Deed of Trust, which was superior to the Gold Bank Second Deed of Trust, remained of record following the foreclosure.

6. The record reflects several "back and forth" transfers of the Siena Subdivision between Sanctum and Siena Development, LLC between April 23, 2003, and August 5, 2003, with the final conveyance vesting title in Siena Development, LLC.

FBML. On December 16, 2004, the Johnsons filed a mechanic's lien on the Property claiming a lien in the amount of $121,237.86. The lien amount was comprised of $63,720.00 (the collective earnest money checks paid by the Johnsons to Sanctum), and $57,517.86 (the amounts paid by the Johnsons for labor and materials incorporated into the residence on the Property).[7]

Several other entities filed mechanic's liens on the Property. One of those entities, Hermes Landscaping, Inc., initiated the first mechanic's lien enforcement action on January 22, 2004. The Johnsons intervened in the Hermes Landscaping, Inc. lawsuit and asserted a claim for breach of contract and for quantum meruit against Sanctum and Siena Development, LLC, and a claim to enforce their mechanic's lien against various defendants. Three other lawsuits seeking to enforce mechanic's liens were subsequently filed by other mechanic's lien claimants. In addition, FBRE filed a petition for declaratory judgment seeking a declaration that the Johnsons' equitable lien and mechanic's lien were neither valid nor enforceable. The Johnsons filed a counterclaim in the FBRE lawsuit seeking to enforce their mechanic's lien. The Johnsons did not assert a claim to enforce the equitable lien they had recorded on August 17, 2004.

All of the pending lawsuits were consolidated. Thereafter, several of the mechanic's liens were settled or resolved, and Gold Bank released the Property (which was now owned by FBRE) from the Gold Bank First Deed of Trust.

By the time of trial, and as noted in the trial court's pretrial order entered March 5, 2008, the only *contested* issue remaining to be adjudicated was the validity and enforceability of the Johnsons' mechanic's lien. The pretrial order specifically noted that the Johnsons were not adjudicating a claim pursuant to their equitable lien and that the Johnsons were waiving any claim associated with the recorded equitable lien. Trial was scheduled for March 17, 2008.

On the morning of trial, the Johnsons' counsel filed a motion for leave to amend the Johnsons' counterclaims, seeking to add two new claims against FBRE—a claim for unjust enrichment and a claim to enforce the equitable lien the Johnsons had recorded on August 17, 2004. The Johnsons claimed the pretrial order erroneously indicated they were waiving their right to adjudicate the equitable lien. The trial court granted the Johnsons leave to amend their counterclaim to add a claim to enforce the equitable lien, finding the evidence necessary to lay the ground work for the mechanic's lien claim was virtually identical to that necessary to support the claim for an equitable lien. However, the trial court denied the Johnsons' motion with respect to the attempt to assert a claim for unjust enrichment.[8]

The trial court then took limited testimony from the Johnsons, and the cause was thereafter submitted to the trial court for decision with the benefit of a Stipulation of Facts and Stipulated Exhibits. The trial court entered its Judgment on November 24, 2008. The trial court entered a judgment in favor of the Johnsons, and

---

7. The trial court's judgment finds this amount was $57,517.86. On a summary sheet included in the Johnsons' mechanic's lien, the Johnsons suggest this amount was $57,517.83. The same summary sheet states that the total of the Johnsons' mechanic's lien claim is in the amount of $121,237.86, though the expenses detailed on the summary actually total $121,217.83. These discrepancies are immaterial to the outcome of this case.

8. The Johnsons do not claim the trial court erred in refusing to permit late amendment of their counterclaim to assert a claim for unjust enrichment.

against Sanctum and Siena Development, LLC, jointly and severally in the amount of $121,237.86.[9] The trial court entered judgment in favor of FBRE and against the Johnsons finding and concluding that both the mechanic's lien and the equitable lien were invalid and unenforceable. This appeal follows.

## Standard of Review

We will affirm a judge-tried case unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Our primary focus is whether the trial court's result is correct, not the route taken to reach it. *City of Kansas City v. N.Y.-Kan. Bldg. Assocs., L.P.*, 96 S.W.3d 846, 853 (Mo.App. W.D.2002). Even where the trial court's reasoning is wrong or insufficient, if the correct result was reached, we must affirm. *Id.*

## Analysis

### Point I

The trial court concluded that because the Johnsons did not provide the notice to owner required by section 429.012.1, "any purported right to a mechanic's lien has been nullified and the Johnsons cannot have a valid mechanic's lien against Lot 7B. Therefore, the mechanic's lien is void and ineffective against this property and the Court need consider no additional evi-

dence relating to this lien to determine its validity." [10]

The Johnsons do not dispute that they failed to provide the notice to owner required by Section 429.012.1. They claim, however, they were not legally obligated to do so because the notice to owner requirement applies only to original contractors and they were not an original contractor.

Section 429.012.1 provides:

Every ***original contractor,*** who shall do or perform any work or labor upon, or furnish any material, fixtures, engine, boiler or machinery for any building, erection or improvements upon land, or for repairing the same, under or by virtue of any contract, or without a contract if ordered by a city, town, village or county having a charter form of government to abate the conditions that caused a structure on that property to be deemed a dangerous building under local ordinances pursuant to section 67.410, RSMo, shall provide to the person with whom the contract is made or to the owner if there is no contract, prior to receiving payment in any form of any kind from such person, (a) either at the time of the execution of the contract, (b) when the materials are delivered, (c) when the work is commenced, or (d) delivered with first invoice, a written notice which shall include the following disclosure language in ten-point bold type:

---

9. Both Sanctum and Siena failed to answer or otherwise respond to pleadings served on them and were deemed by the trial court to be in default.

10. The trial court also noted in its findings that the Johnsons did not attach a copy of the "Consent to Owner" to their mechanic's lien as required by section 429.013.2. We need not address this finding, as the trial court's conclusion of law declaring the Johnsons' me-

chanic's lien to be invalid and unenforceable refers only to the Johnsons' failure to provide the "Notice to Owner" required by section 429.012.1. We do note, however, that section 429.013.2 applies only to "repair or remodeling of or addition to owner-occupied residential property of four units or less," and not to new residential construction. Section 429.013.1. Thus, section 429.013.2 had no application to this case.

NOTICE TO OWNER

■ FAILURE OF THIS CONTRACTOR TO PAY THOSE PERSONS SUPPLYING MATERIAL OR SERVICES TO COMPLETE THIS CONTRACT CAN RESULT IN THE FILING OF A MECHANIC'S LIEN ON THE PROPERTY WHICH IS THE SUBJECT OF THIS CONTRACT PURSUANT TO CHAPTER 429, RSMO. TO AVOID THIS RESULT YOU MAY ASK THIS CONTRACTOR FOR "LIEN WAIVERS" FROM ALL PERSONS SUPPLYING MATERIAL OR SERVICES FOR THE WORK DESCRIBED IN THIS CONTRACT. FAILURE TO SECURE LIEN WAIVERS MAY RESULT IN YOUR PAYING FOR LABOR AND MATERIAL TWICE.

(Emphasis added.) By its express terms, section 429.012.1 applies only to mechanic's lien claims asserted by original contractors-in common parlance, general contractors. " 'One who makes a contract to perform labor or furnish materials with the then owner of the property is an original contractor.' " *Kenny's Tile & Floor Covering, Inc. v. Curry,* 681 S.W.2d 461, 471–72 (Mo.App. W.D.1984) (citation omitted).

The trial court concluded in its judgment that "before any contractor, *subcontractor, or other party* may have a mechanic's lien against any real property in the State of Missouri, the contractor *and the subcontractor* must have provided 'notice to owner' in the form and style required by Missouri Revised Statute section 429.012.1 . . . ." (Emphasis added.) This erroneously declares the law. Subcontractors are not obligated to provide the "Notice to Owner" required by section 429.012.1. Subcontractors and other parties besides the "original contractor" are

required to provide notice of intent to file a mechanic's lien at least ten days before they file a mechanic's lien statement pursuant to section 429.100. This obligation is separate and distinguishable from the obligation to provide notice to owner required by section 429.012.1, which notice is required to be provided before work commences or before any payments are made by the owner.

The trial court's judgment does not reveal whether the trial court viewed the Johnsons as "original contractors" or as "subcontractors." We are, however, to construe the facts in the light most favorable to the judgment. *Estate of Thompson,* 148 S.W.3d at 35. We must assume, therefore, that the trial court believed the Johnsons to be "original contractors" as that term is used in section 429.012.1.[11]

■ Even giving the benefit of this assumption to the trial court, we must conclude that the trial court erroneously applied section 429.012.1 as the Johnsons were not "original contractors" as a matter of law. As noted above, an "original contractor" is one who enters into a contract with the owner *to perform labor or furnish material* for the owner. *Kenny's Tile,* 681 S.W.2d at 471–72. The Johnsons did not enter into the Construction Contract with Sanctum in Sanctum's capacity as the owner of the Property for the purpose of performing labor or furnish materials for Sanctum. The Construction Contract did not oblige the Johnsons to perform labor or furnish materials to Sanctum in its capacity as the owner of the Property. The Johnsons were not an "original contractor" given the accepted meaning of that term as used in section 429.012.1. Though the

---

11. We are guided to this assumption given one of the trial court's findings, which stated: "The construction contract does not contain the notice to owners specified by section

429.012. . . ." We assume this was a pertinent finding because the Johnsons entered into the Construction Contract with Sanctum, the owner of the Property.

Johnsons entered into a contract with Sanctum, the purpose of the Construction Contract was for Sanctum to sell to the Johnsons, and for the Johnsons to buy from Sanctum, the Property. The purpose of a contract must be evaluated when assessing whether one is an "original contractor" obliged to give notice to owner as required by section 429.012.1. *Home Bldg. Corp. v. Ventura Corp.*, 568 S.W.2d 769, 771 (Mo. banc 1978) (person who has contracted directly with owner concerning what such contractor is to do is the "original contractor" within the meaning of section 429.012.1). The trial court could not have concluded that the Johnsons were an "original contractor" under section 429.012.1.

Though Sanctum and the Johnsons did have an unwritten understanding that *permitted* the Johnsons to purchase materials and/or to arrange for labor for the Property in exchange for a dollar for dollar credit against the purchase price, this understanding did not *obligate* the Johnsons to provide Sanctum construction services. Moreover, this unwritten understanding was entered into with Sanctum independent of the Construction Contract. The Construction Contract clearly and unambiguously obligated Sanctum to perform all of the work required to construct the Johnsons' residence. To the extent the Johnsons undertook to provide labor or materials Sanctum would otherwise have been obligated to provide, *at best* the Johnsons might have been characterized as subcontractors.[12] In such case, section 429.012.1 would not have applied to the Johnsons.

We necessarily conclude that the trial court erroneously declared and applied section 429.012.1 to this case. Section 429.012.1 applies only to original contractors. The Johnsons were not original contractors as that term is used in section 429.012.1.

■ Notwithstanding the trial court's error, we are nonetheless obliged to affirm the trial court's judgment declaring the Johnsons' mechanic's lien to be invalid and unenforceable because this result is accurate on other grounds. *N.Y.-Kan. Bldg. Assocs., L.P.*, 96 S.W.3d at 853. The Johnsons were not eligible lien claimants, either as original contractors or as subcontractors. When the Johnsons entered into the Construction Contract, they acquired equitable title to the Property. *Allied Pools, Inc. v. Sowash*, 735 S.W.2d 421, 424 (Mo.App. W.D.1987) (purchaser acquires equitable title under contract for sale). Equitable title is sufficient to render the purchaser an "owner" for purposes of Missouri's mechanic's lien statutes. *Id.* If an equitable owner contracts for work or material on the property being acquired, the purchaser is an "owner," and his equitable interest in the property can be reached by those providing the work. *Sawyer–Austin Lumber Co. v. Clark*, 172 Mo. 588, 73 S.W. 137, 138–39 (1903); *See also Wolf Orgs., Inc. v. Oles*, 119 Md.App. 357, 705 A.2d 40, 45–46 (Md.Ct.Spec.App.1997). Thus, while the Johnsons were under contract to purchase the Property, they were the "equitable owner" of the Property and could have subjected the Property to mechanic's liens for the services of others with whom they contracted. *Allied Pools, Inc.*, 735 S.W.2d at 424–25; *Hertel Elec. Co. v. Gabriel*, 292 S.W.2d 95, 98 (Mo.App.1956); *Joplin Cement Co. v. Greene County Bldg. & Loan*

---

**12.** Apparently believing themselves to be "subcontractors," the Johnsons provided the ten day notice of intent to file mechanic's lien prior to the filing of their mechanic's lien required by section 429.100. However, as we hereinafter discuss, the Johnsons were not eligible mechanic's lien claimants and, thus, were not an original contractor or a subcontractor in connection with the material and labor they provided for the Property.

*Ass'n,* 224 Mo.App. 1064, 34 S.W.2d 529, 532 (1931).

However, the Johnsons had no ability to assert a lien arising from labor performed by them while they held equitable title to the Property. Section 429.010.1 describes, generally, the circumstances that can give rise to the right to file a mechanic's lien. The classification of eligible lien claimants is described as:

> Any person who shall do or perform any work or labor upon land ... or furnish any material ... for any building, erection or improvements upon land ... under or by virtue of any contract with the owner ... thereof ... shall have ... a lien upon such building ... and upon the land belonging to such owner ... on which the same is situated, to the extent of three acres....

Section 429.010.1.

The Johnsons did provide for work, labor, and/or materials to be performed on the Property. However, they did not do so "by virtue of any contract with the owner." They did so *because* they were themselves an "owner." Any work, labor, and/or materials the Johnsons provided were not provided for the benefit of Sanctum by virtue of a contractual obligation owed to Sanctum. Rather, all such work was provided by the Johnsons for their own benefit as the equitable, and soon hoped to be legal, title holder of the Property. As such, the Johnsons were not eligible lien claimants—whether as an original contractor or as a subcontractor—against the Property. Though the Johnsons clearly paid for improvements to the Property, they did so as a form of, and for the purpose of, purchasing the Property. The cost of whatever work they elected to provide was to be credited against the purchase price for the Property. Though, as we discuss, *infra,* these "advances" on payment of the purchase price entitled the Johnsons to an equitable lien, the advances did not provide a basis to assert a mechanic's lien.

The mere fact that the Johnsons never acquired legal title to the Property, though quite unfortunate, is immaterial to determination of their eligibility as a mechanic's lien claimant. The Johnsons' status for purposes of determining eligibility to file a mechanic's lien had to be determined as of the time the Johnsons provided materials and labor for which they sought to file a lien, and not at the time they filed the mechanic's lien.

We conclude, therefore, that although the stated legal basis for the trial court's judgment declaring the Johnsons' mechanic's lien invalid and unenforceable is erroneous, the judgment must nonetheless be affirmed as the Johnsons, as equitable owners of the Property at the time they provided the labor and materials described in their mechanic's lien, were not eligible mechanic's lien claimants. As previously noted, our review must focus on whether the trial court's result is correct, and not on whether the route taken to reach the result is correct. *N.Y.-Kan. Bldg. Assocs., L.P.,* 96 S.W.3d at 853. Point one is denied.

### Points II and III

The trial court concluded in its judgment that the Johnsons did not have a valid or enforceable equitable lien against the Property because they could not establish, as to FBRE, two of the three elements of an equitable lien, and because their equitable lien, even if valid, was foreclosed by the foreclosure of Gold Bank's Second Deed of Trust. The Johnsons claim in their second point relied on that the trial court erred in concluding they did not have an equitable lien against the Property because the trial court erroneously applied the law of "vendee liens" and not the law of "strict equitable liens." In

their third point relied on, the Johnsons again claim the trial court erred in applying the law of "vendee liens" instead of "strict equitable liens" because the trial court's finding that their equitable lien had been foreclosed left them with no adequate remedy at law.

The Johnsons' claims are confusing and seem to suggest that there is a legal distinction between "vendee liens" and "equitable liens." Yet, the Johnsons also argue that any premature payment of purchase price on a real estate contract is an equitable lien known as a vendee's lien, thus equating the two concepts. Reading these confusing points relied on together, and as best we can discern, it seems the Johnsons are arguing that all monies they paid to Sanctum, either as earnest money deposits or to perform work on the residence, constituted pre-paid purchase price supporting a vendee's lien, but that if the vendee's lien was foreclosed, the Johnsons should nonetheless be afforded an equitable lien on the Property as they will otherwise be left without a remedy to recoup their losses.

An equitable lien " 'is a right, not recognized at law, but only in equity, which a court of equity will enforce in a proper proceeding by adjudging that a fund, or property, or the proceeds thereof, be applied in full, or in part, to the satisfaction of a particular debt or demand.' " *Miller v. Heisler*, 187 S.W.2d 485, 491 (Mo.App.1945) (citation omitted). "An equitable lien may attach to property for the purpose of securing payment of an existing obligation and is ancillary to and separate from the debt." *Fredco Realty, Inc. v. Jones*, 906 S.W.2d 818, 822 (Mo.App. E.D. 1995). "Equitable liens have been enforced under various facts and circumstances and it is difficult, if not impossible, to give an exact definition of what is meant by the term...." *Miller*, 187 S.W.2d at 491. However, the "necessary require-

ments of an equitable lien are: (1) a duty or obligation owed by one person to another; (2) a res to which that obligation fastens and which can be identified; and (3) an intent, express or implied, that the property serve as security for the payment of the debt or obligation." *Fredco Realty*, 906 S.W.2d at 822; *see also Iota Mgmt. Corp. v. Boulevard Inv. Co.*, 731 S.W.2d 399, 420 (Mo.App. E.D.1987).

Notwithstanding the confusing suggestion in the Johnsons' points relied on to the contrary, there is no legal distinction between a vendee's lien and an equitable lien. Rather, a vendee's lien is simply an example of an equitable lien. *See Constr. Equip. Mgmt., Inc. v. Dunhill Dev. Corp.*, 892 S.W.2d 639, 644 (Mo.App. E.D.1994); *Stanovsky v. Group Enter. & Constr. Co., Inc.*, 714 S.W.2d 836, 838 (Mo. App. E.D.1986). Under Missouri law, "it is a well established equitable principle that any premature payment of the purchase price of a real estate contract operates as a lien on the property in question *pro tanto.*" *Constr. Equip.*, 892 S.W.2d at 644 (*citing Stanovsky*, 714 S.W.2d at 838).

In this case, the trial court found that the Johnsons made earnest money deposits in the total amount of $63,720.00 to Sanctum. The trial court also found that the Johnsons paid for materials and labor to assist in the construction of the residence on the Property in the amount of $57,517.86, and that they had performed the condition precedent to Sanctum's obligation to credit the purchase price for the Property. As a matter of law, this pre-paid purchase price constituted a vendee's lien against the Property. *Id.*

The trial court concluded, however, that the Johnsons did not have a legally recognizable equitable lien. The trial court held that because the Johnsons could have filed a valid mechanic's lien had they

provided "notice to owner," the availability of a statutory lien negated the availability of an equitable lien. This stated legal principle is generally accurate, at least insofar as the portion of the Johnsons' claim that might have been lienable.[13] *See Brask v. Bank of St. Louis*, 533 S.W.2d 223, 227 (Mo.App.1975) (equitable lien remedy not available when there is a remedy at law under a statutory lien). The legal principle as applied to this case, however, is erroneous as a matter of law. We have already concluded that the Johnsons could not have asserted a valid mechanic's lien against the Property, as they were an equitable owner at the time the labor and materials they paid for were provided. They were not barred, therefore, from asserting an equitable lien. The trial court's conclusion to the contrary was erroneous.

The trial court also held that the Johnsons did not have a valid equitable lien because they could not establish the first and third elements of an equitable lien *as to FBRE*. Specifically, the trial court concluded that there was no evidence of a duty or obligation owed between FBRE and the Johnsons, and that there was no evidence of any intent by the Johnsons that the Property serve as security for the payment of any debt or obligation owed by FBRE.

Though the trial court accurately described the elements of an equitable lien, the trial court erroneously applied the law by focusing on the relationship between FBRE and the Johnsons to determine whether those elements had been established. With respect to the first element of an equitable lien, the relevant relationship for determining whether there was a duty or obligation owed was not the relationship between the current owner of the Property (FBRE) and the Johnsons, but

rather the relationship that led to the Johnsons' pre-payment of purchase price for the Property. This relationship, of course, was between the Johnsons and Sanctum.

The trial court found that there was a relationship between Sanctum and the Johnsons evidenced by the Construction Contract that obligated Sanctum to sell the Property to the Johnsons in exchange for payment of the purchase price and that obligated the Johnsons to pre-pay a portion of the purchase price as earnest money deposits. The trial court also found that there was an unwritten agreement between Sanctum and the Johnsons that permitted the Johnsons to pre-pay a portion of the purchase price by paying directly for certain labor or materials used in the construction of the residence on the Property. This relationship and the duties and obligations arising out of the relationship established the first element of an equitable lien as a matter of law.

The aforesaid duties and obligations attached to an identifiable "res"—the Property—which the Johnsons expected Sanctum to sell, and which Sanctum expected the Johnsons to buy. Thus, the second element of an equitable lien was also clearly established as a matter of law.

The third element of an equitable lien requires an express or implied intent that the identified res will serve as security for the payment of the debt or obligation. Here, though the Johnsons testified that they did not expressly intend for the Property to serve as security to reimburse them for money they had advanced, the trial court found that the Construction Contract obliged Sanctum to sell the Property to the Johnsons. The intent

---

13. The earnest deposit paid by the Johnsons would not have been recoverable pursuant to a mechanic's lien, as the deposits did not represent work, labor, or materials performed on the Property by the Johnsons.

that a particular property serve as "security" for payment of an obligation need not be express or literal. Rather, that intent or expectancy can be implied. Such intent is implied as a matter of law in the case of a vendee lien, where, as we have stated, "any premature payment of the purchase price of a real estate contract operates as a lien on the property in question *pro tanto*." *Constr. Equip.*, 892 S.W.2d at 644 (*citing Stanovsky*, 714 S.W.2d at 838). A "vend[ee]'s lien exists independent of any express agreement." *Stanovsky*, 714 S.W.2d at 838.

■ Based on the trial court's findings, the Johnsons pre-paid a total of $121,237.86 of their $317,600.00 purchase price for the Property. We conclude, therefore, that the trial court erroneously held that the Johnsons did not have a legally recognizable equitable lien against the Property in the total amount paid by them toward the purchase price for the Property. Given the trial court's findings of fact, we find as a matter of law that the Johnsons did, in fact, have a legally recognizable vendee's lien against the Property in the total amount of $121,237.86.

We must address, however, whether the trial court correctly found that the equitable lien was foreclosed at the time Gold Bank foreclosed its Second Deed of Trust. The Gold Bank Second Deed of Trust was recorded against the Property on March 15, 2001. This predated the Johnsons' payment of earnest money deposits and their payments for labor and materials, which payments occurred, according to the trial court's findings, between June 29, 2002, and June 18, 2004.

■ Where an equitable lien pre-dates a deed of trust, the equitable lien survives foreclosure of the deed of trust. *Constr. Equip.*, 892 S.W.2d at 645; *Stanovsky*, 714 S.W.2d at 839. Unlike the circumstances in *Construction Equipment* and *Stanovsky*, the Johnsons' equitable lien post-dates the Gold Bank Second Deed of Trust. Applying general principles of foreclosure law, the trial court found that foreclosure of the Gold Bank Second Deed of trust foreclosed any equitable lien the Johnsons may have had. *Rader v. Dawes*, 651 S.W.2d 629, 634 (Mo. App. W.D.1983). In the absence of any evidence of waiver of priority of the Second Deed of Trust by Gold Bank, this legal conclusion must be affirmed.

■ Generally, the priority of a superior deed of trust over an equitable lien can be waived where there is evidence that the holder of a superior deed of trust is aware that its loan will be used for construction on the property and will be secured by the property where the construction activity will be undertaken. *Constr. Equip.*, 892 S.W.2d at 645 (*citing Drilling Serv. Co. v. Baebler*, 484 S.W.2d 1, 10 (Mo.1972)). The concept of waiver of priority as applied to equitable liens is the equivalent of the concept of the "first spade rule" applied to mechanic's liens. *Drilling Serv. Co.*, 484 S.W.2d at 9–10 (the first spade rule and the doctrine of waiver lead to the same conclusion); *Dave Kolb Grading, Inc. v. Lieberman Corp.*, 837 S.W.2d 924, 934–35 (Mo.App. E.D.1992) (lender waived priority because had knowledge of potential liens). Under the "first spade rule," mechanics liens attach to the ***improvements constructed*** (but not to the land on which those improvements were constructed) in preference to any ***prior*** lien, mortgage, or encumbrance commencing with the first delivery of material or commencement of work. *Butler Supply, Inc. v. Coon's Creek, Inc.*, 999 S.W.2d 748, 750 (Mo.App. W.D.1999); Section 429.050. As such, " 'all mechanic's liens commence at the date of the first stroke of the axe or spade … without regard to the time of their being filed.' " *Id.* (*quoting Hammond v. Darlington*, 109 Mo.App. 333, 84 S.W. 446, 449 (1904)). In addition, mechanic's liens attach to the ***land and***

*improvements constructed,* and have priority over any encumbrances that attach subsequent to the commencement of the improvements. Section 429.060.

In *Construction Equipment,* the Eastern District found waiver of the priority of a deed of trust as to a subsequent equitable lien where the lender made its loan in reliance on the construction project and extended a second loan (which it contended related back in priority to the first loan) when it was aware that construction had commenced on the residential lot where the equitable lien arose. 892 S.W.2d at 645. Testimony was elicited at trial about the Bank's knowledge in support of the affirmed trial court's findings. *Id.*

The trial court's judgment does not address whether Gold Bank waived the priority of its Second Deed of trust. The Stipulation of Facts stipulates that the Gold Bank loans were extended to Sanctum for the purpose of constructing the Siena Subdivision, including the Property. However, in *Westinghouse Electric Co. v. Vann Realty Co.,* 568 S.W.2d 777, 781 (Mo. banc 1978), a mechanic's lien case, the Supreme Court held that mere knowledge that improvements will be made does not result in subordination of the mortgage lien. The Supreme Court noted the lack of evidentiary support of any waiver of priority by the lender. *Id.* "There was no testimony to show involvement of [the lender] in the project other than as a lender of funds." *Id. See also Kranz v. Centropolis Crusher, Inc.,* 630 S.W.2d 140, 149 (Mo.App. W.D. 1982) (In light of *Westinghouse Electric,* this court noted that "something more by way of participation by the lenders in the construction program is necessary before waiver of the mortgage priority can result.").

Thus, though the stipulated fact that Gold Bank extended its loans for the purpose of construction of the Siena Subdivision suggests the possibility that evidence of Gold Bank's knowledge sufficient to support a finding of waiver could have been developed, the stipulated fact alone is insufficient to permit us to find, as a matter of law, that Gold Bank waived its priority over the Johnsons' equitable lien.

In any event, the Johnsons did not raise the issue of waiver of priority with the trial court, meaning the issue has not been preserved for appellate review. *Stiens v. Stiens,* 231 S.W.3d 195, 199 (Mo. App. W.D.2007). Though the Johnsons, in their amended counterclaim filed on the day of trial, sought a declaration that their equitable lien had priority over any interest claimed by FBRE, the Johnsons made no such allegation with respect to the priority of Gold Bank's Deeds of Trust, and certainly did not allege that any priority Gold Bank had over their equitable lien been waived. Waiver is an affirmative defense which must be pleaded per Rule 55.08. *Westinghouse Electric,* 568 S.W.2d at 781. We are reluctant to undertake a search of the record to locate possible support for a theory not raised by the Johnsons, as to do so would place us in the position of improperly acting as an advocate for a party. *Boyd v. Boyd,* 134 S.W.3d 820, 824 (Mo.App. W.D.2004) (stating appellate court cannot act as an advocate for the appellant by supplying his argument). As such, we conclude that the trial court correctly found that even if the Johnsons had an equitable lien against the Property, it was foreclosed at the time Gold Bank foreclosed its Second Deed of Trust.[14]

14. Had the trial court been presented with evidence sufficient to permit it to conclude that Gold Bank waived the priority of its Second Deed of Trust, FBRE could nonetheless defeat the Johnsons' claim to an equitable lien if FBRE acquired the Property as a bona fide purchaser. *See Stanovsky,* 714 S.W.2d at 838–39. A bona fide purchaser is one who

The trial court observed that "the Judgment in this case that must be entered by the Court under the law does result in a windfall to Plaintiff, [FBRE]. That is not a result that sits well with the Court, but it is a result that is required by the law as the Court interprets the law." We share in the same unsettled feeling expressed by the trial court. There is no doubt that FBRE has benefitted from the Johnsons' expenditure of tens of thousands of dollars on a home the Johnsons expected to own but lost to foreclosure by Gold Bank. The apparent unfairness of the outcome, however, does not permit us to ignore the applicable law, particularly given the constraints imposed by the manner in which this case was pled and tried. We are obliged to deny Points Two and Three and to affirm the trial court's judgment.

### Conclusion

We affirm the judgment of the trial court.

All concur.

pays valuable consideration, has no notice of outstanding rights of others, and acts in good faith. *Brown v. Mickelson,* 220 S.W.3d 442, 452 (Mo.App. W.D.2007). Based on the record before us, we believe the trial court would have been obliged to conclude that FBRE was not a bona fide purchaser of the Property, and thus that FBRE would have acquired the Property subject to the Johnsons' equitable lien. The record strongly suggests that title to the Property was conveyed to FBRE for little to no consideration and, thus, for no "value."

In addition, the Johnsons recorded their equitable lien and a notice of lis pendens long before the Property was conveyed to FBRE, imputing knowledge of the Johnsons' claimed interest in the Property to FBRE. *Space Planners Architects, Inc. v. Frontier Town–Mo., Inc.,* 107 S.W.3d 398, 406 (Mo.App. S.D.2003) (stating that a lis pendens filing gives "constructive notice to purchasers or encumbrancers" of any "equitable right, claim or lien affecting or designed to affect real estate").